**Mark PLORIN and Susan Plorin, Appellants,**

v.

**BEDROCK FOUNDATION AND HOUSE LEVELING COMPANY, INC., Appellee.**

No. 05–87–00272–CV.

Court of Appeals of Texas, Dallas.

May 26, 1988.

Rehearing Denied July 25, 1988.

Janice E. Cohen, Dallas, for appellants.

Kemble White, Dallas, for appellee.

Before HECHT, HOWELL and BAKER, JJ.

HECHT, Justice.

The single issue in this case is whether the trial court abused its discretion in dismissing appellants' cause of action as a sanction for destroying physical evidence while a discovery request was pending. We hold that it did not, and consequently, affirm the trial court's judgment.

Mark and Susan Plorin contracted with Bedrock Foundation and House Leveling Company, Inc. to repair and level the foundation of the Plorins' home. Bedrock completed the work on November 7, 1985, but the Plorins were not satisfied. The Plorins' numerous complaints culminated in a formal demand letter to Bedrock dated March 26, 1986. Bedrock refused to accede to the Plorins' demands, and, on June 20, 1986, the Plorins sued Bedrock for breach of contract and violations of the Texas Deceptive Trade Practices Consumer Protection Act.

On July 2, 1986, less than two weeks after suit was filed, attorneys for the Plorins and Bedrock agreed that Bedrock would inspect the Plorins' home on July 13, 1986, for discovery purposes and possible settlement. The Plorins' attorney confirmed the agreement in writing.[1] At the instance of the Plorins' attorney, the inspection was rescheduled for August 6, 1986. On that day Bedrock inspected the Plorins' home and determined that the foundation was completely level. At the conclusion of the inspection the Plorins announced that they had hired another firm to repair the defects of which they were complaining, and that that work had been completed the day before. Thus, all evidence of the claimed defects in Bedrock's work was destroyed while Bedrock's request to inspect the home was pending, indeed, after the first inspection date had been rescheduled at the Plorins' request.

Bedrock moved for sanctions, asserting that the Plorins had abused the discovery process by repairing the claimed defects while Bedrock's request to inspect the home was pending, thereby denying Bedrock the opportunity to determine the condition of the Plorins' home. Without notice of a hearing on Bedrock's motion, the trial court dismissed the Plorins' claims with prejudice. Because the Plorins had not received notice of the hearing, the trial court granted their motion for reconsideration. Following a hearing and argument by both sides, the trial court again dismissed the Plorins' action.[2]

■ The Plorins argue that the trial court was not empowered to impose discovery sanctions absent their disobedience of a discovery *order* or their failure to comply with a proper, formal request for discovery. The trial court's power to sanction discovery abuse is not so limited. Neither disobedience of a discovery order nor failure to comply with a formal discovery request is a prerequisite for imposition of sanctions. TEX.R.CIV.P. 215. In this case the inspection of the Plorins' home was arranged by agreement of the parties. Discovery by agreement is not only permitted, it is encouraged. *See* Rule 1.15, Local Rules of District Courts in Dallas County. To fail to enforce undisputed, voluntary discovery agreements with the sanctions authorized by Rule 215 would discourage cooperation among parties. Rule 215 expressly authorizes the trial court to impose sanctions when it finds that "a party is abusing the discovery process in seeking, making or resisting discovery".

■ Having concluded that the trial court was empowered to dismiss the Plorins' action, we must address whether it abused its discretion in doing so. The Plorins by their actions totally destroyed essential evidence pertaining to the case while Bedrock's discovery request was pending. The Plorins might well have been within their rights to repair the alleged defects in Bedrock's work immediately after it was completed, or in the weeks that followed, or even after suit was filed. For the Plorins to do so after agreeing to Bedrock's request to inspect the defects of which the Plorins were complaining, even after the agreed to inspection had been postponed at the Plorins' request, was a flagrant abuse of discovery.

A trial court may impose discovery sanctions both to coerce and to punish a disobedient party, and its action will be altered on appeal only for an abuse of discretion. *Southern Pacific Transportation Co. v. Evans*, 590 S.W.2d 515, 518–519 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). The issue is not whether we agree with the sanction imposed by the trial court, but whether we can say that the trial court exceeded its discretion.

The test for abuse of discretion is not, whether in the opinion of the reviewing

---

1. We need not consider whether this agreement was enforceable because it was undisputed.

2. The dissent argues that the order granting sanctions is not final because it does not dispose of Bedrock's counterclaim. The language of the order—"This case is dismissed with prejudice."

—confutes the dissent's argument. As further proof that the order means what it says, it awards Bedrock all attorney fees claimed to have been incurred in the case, which is all the relief to which Bedrock could have been entitled by its counterclaim.

court, the facts present an appropriate case for trial courts' actions. Rather, it is a question of whether the court acted without reference to any guiding rules or principles. *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.Comm.App.—1939, opinion adopted). Another way of stating the test is whether the act was arbitrary or unreasonable. *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex.1984); *Landry v. Travelers Insurance Co.*, 458 S.W.2d 649, 651 (Tex.1970). The mere fact that a trial judge may decide a matter within its discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Southwestern Bell Telephone Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex.1965); *Jones v. Strayhorn*, [159 Tex. 421] 321 S.W.2d 290, 295 (Tex.1959). *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–242 (Tex.1985). We

have no statement of facts from the hearing before the trial court showing what factors were considered. We therefore assume that the trial court made all necessary findings to support its judgment. *Ward v. Cornyn*, 700 S.W.2d 281 (Tex.App. —San Antonio 1985, no writ); *Harris Data Communications, Inc. v. Dellana*, 680 S.W.2d 641, 642 (Tex.App.—Austin 1984, no writ).

The record contains no indication that the trial court was capricious, arbitrary, or unreasonable. On the contrary, the sanction imposed fit the abuse. Having destroyed the evidence pertaining to their claims, the Plorins are barred from asserting them.

The Plorins' nine points of error are overruled. The judgment is affirmed.

HOWELL, Justice, dissenting.

I dissent; there are multiple reasons why the ultimate sanctions of dismissal cannot stand in this case.[1]

---

1. In addition to my dissent on the merits, I further dissent on the ground that we have no jurisdiction of this appeal. On July 2, 1986, Appellees/Contractors filed a counterclaim under the Deceptive Trade Practices Act and alleged that Appellants/Owners had brought a groundless action in bad faith for the purpose of harassment; they pleaded for attorney's fees. TEX.BUS. & COM.CODE ANN. § 17.50(c) (Vernon Supp.1987). It was necessary for the trial court to dispose of the counterclaim before it could render a final judgment. The trial court has entered but one order, the date thereof being December 3, 1986. Properly construed, that order did not dispose of the counterclaim. The continued pendency precludes the entry of an appealable final judgment.

A pleading entitled "Defendant's Motion for Sanctions" was filed on September 15, 1986. The only relief requested by the motion, which was significant to the point under discussion, was that "Plaintiffs' lawsuit be dismissed with prejudice" and that Contractors have attorney's fees and expenses "in doing the walk through and in filing this motion." The December 3, 1986, order recited the consideration of the motion, of the annexed affidavits, and of evidence relating to service of notice. It stated that the motion "should be granted" and proceeded to give judgment that "this case is dismissed with prejudice" and awarded $2,722.50 "to cover their attorney and expert witness fees to pursue their motion."

Pursuant to Owners' motion to modify and to vacate, the court held a further hearing on July

12, 1987, at which time it made a docket notation of "Advisement," but never entered any further order. Apparently, the trial court announced that it was declining to set aside its previous order at that time and further indicated that it would probably carry Owners' motions under advisement until they had been overruled by operation of law.

It is the obligation of this court to notice jurisdictional defects on its own motion and to dismiss when it finds itself without jurisdiction. *Conley v. Pompa*, 627 S.W.2d 512, 513 (Tex.App. —Corpus Christi 1982, no writ). This court has no jurisdiction to consider an attempted appeal from an interlocutory trial court judgment. *See Yancey v. Jacob Stern & Sons, Inc.*, 564 S.W.2d 487, 488 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). A judgment that fails to dispose of all parties and all issues is not a final judgment and is not appealable. *Citizens National Bank v. Callaway*, 597 S.W.2d 465, 466 (Tex.Civ. App.—Beaumont 1980, writ ref'd). In order to preserve the right of appeal, and in order to obviate litigants from the necessity of attempting precipitous appeals when in doubt as to finality, where there has been no conventional trial on the merits, judgments will be construed as not being final unless it is clear that all parties and all issues have been fully and finally disposed of. *Schlipf v. Exxon Corp.*, 644 S.W.2d 453, 454–5 (Tex.1982); *PHB, Inc. v. Goldsmith*, 539 S.W.2d 60 (Tex.1976); *North East Ind. School Dist. v. Aldridge*, 400 S.W.2d 893, 897–8 (Tex.1966).

Applying the foregoing rules, it is clear that the judgment was not final; this appeal must be

The majority has wholly failed to note that Rule 215 is entitled and deals with *"Sanctions"*; i.e., *punishment* for *wilful misconduct.* The majority has completely glossed over the undeniable fact that *punishment* has been imposed, it has failed to explicate why the conduct of Owners was misconduct; it has wholly failed to concern itself with the concept of wilfulness.

The proposition that penal statutes and regulations may not be extended by construction is too well established to argue. *See, e.g., Bruner v. State,* 463 S.W.2d 205, 215–16 (Tex.Crim.App.1970). A party who seeks to invoke a penalty must bring himself squarely within the provisions of the penalty provision being invoked. *Agey v. American Liberty Pipe Line Co.,* 141 Tex. 379, 172 S.W.2d 972, 974 (1943).

The majority acknowledges, in effect, that Owners may not be penalized (sanctioned) except for " 'abusing the discovery process in ... making or resisting discovery.' " It fails to point out how abuse occurred. Even further, it fails to point out how "the discovery process" was involved.

Rule 166b, by its title, defines: "Form and Scope of Discovery." It commences by listing *"permissible* forms of discovery." TEX.R.CIV.P. 166b(1). A party who seeks to invoke the penal provisions of Rule 215 must bring himself within the scope of Rule 166b. Plainly, the forms and procedures listed therein and thereafter are exclusive; the movant may not invoke the penal provisions of the discovery rules unless he follows "permissible forms of discovery."

Among the forms of discovery specified by Rule 166b(1) are "requests and motions for entry upon and examination of real property." Rule 166b(1)(e). However, subdivision (2)(c) of the rule requires that, in order to obtain a right of entry upon designated land, "a request or motion to produce" be served upon the respondent. The specification that the request be "served" implies a written demand. Contractors never "served" a written demand.

The interpretation that a written demand is necessary is reinforced by inspection of Rule 167 setting forth the "Procedure" to be followed. TEX.R.CIV.P. 167(1). The discovering party is required by this Rule to "serve" a request upon the discoveree— again, meaning a written demand. The need for a writing is manifest because our district courts are courts of record and all pleadings are to be in writing. TEX.R. CIV.P. 45(d). At the time of the occurrence of the alleged infraction, the rule further provided that "[t]he request shall be filed with the Clerk and served upon every party to the action." TEX.R.CIV. PRO. 167(2) (eff. April 1, 1985).[2] The pro-

---

dismissed. There is no contention that the trial court had anything before it on December 3 other than Contractors' motion for sanctions. Properly construed, the order went no further than to grant the request that Owners' cause of action be dismissed. The only possible doubt arises from the decretal portion of the order stating that *"This case* is dismissed"; did it undertake to include the counterclaim within the ambit of "this case?" Applying the rules of construction just cited, it must be held that the dismissal order did not reach so far.

In construing the terms of a judgment or order we must look to the pleadings before the court. Here, there is nothing to indicate that the court had the counterclaim before it, only the motion. Likewise, in construing the decretal provisions of a judgment or order, we must look to the recitals and findings that precede those decretal provisions. Presently, the recitals and findings only relate to the motion, not the counterclaim. It follows that the counterclaim has not been ruled upon. Such conclu-

sion becomes irrevocable when it is perceived that the decretal provision reads "This case is dismissed *with prejudice."* The record reflects no basis whatever to dismiss the counterclaim "with prejudice"; it follows that the order addressed only the original cause of action of Owners. Contractors' counterclaim was not addressed; it remains pending. Until it has been disposed of, we have no jurisdiction and the appeal must be dismissed. *See Reimer v. Scott,* 666 S.W.2d 384, 385 (Tex.App.—Houston [14th Dist.] 1984, writ dism'd); *Springwoods Shopping Center v. University Savings Ass'n,* 610 S.W.2d 177, 178–79 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.).

2. The current rule dispenses with the necessity to file the demand with the clerk. TEX.R.CIV. PRO. 167(3) (eff. January 1, 1988). Any question whether the Supreme Court intended through this amendment to make oral discovery requests subject to the sanctions of Rule 215 must abide another case.

vision further reinforces the interpretation that a written demand is required.

Contractors, the discovering parties, chose not to follow the procedure laid down by the rules. Instead, the affidavit of Contractors' attorney in support of their motion for sanctions states:

On or about July 2, 1986, when I filed the Answer in this case, I called opposing counsel and asked that we schedule a walk through of the property for discovery and settlement purposes. She agreed, and we scheduled a walk through for July 13, 1986, at 1:00 p.m. Attached as Exhibit A is a copy of a letter dated July 8, 1986, from ... [Owners' attorney] confirming our agreement. [The transcript fails to reflect any such attachment.] ... On the day before the scheduled walk through, I received a call from someone in ... [opposing counsel's] office advising that she was going to be hospitalized and would not be able to do the walk through.... We rescheduled the walk through for August 6, 1986, and on that date [we] ... inspected the property.... At the end of the inspection, ... [Owners] announced to us that the foundation was level because on the previous day another foundation company had completely redone the work.

Contractors agree in their brief that through their attorney, they "arranged an inspection by agreement *rather than by a formal demand for inspection under Rule 167.*" They made an election, a free choice. They certainly could have proceeded under the rule; they chose not to invoke the rule. Inasmuch as the penal provisions of the rules only apply when the rules are violated through wilful misconduct, Contractors may have not obtain the sanctions provided for violation of those rules.

The proposition extends far beyond empty formalism. To hold otherwise is to rip asunder the basic proposition that penal provisions are not to be extended by construction; it is for the rule-making authority, (in this instance, the Texas Supreme Court) to decree that informal as well as formal discovery agreements will hereafter be subject to enforcement through the exaction of penalties, including the harshest penalty of all, dismissal. The reason for relegating the matter to the rule-making authority is to provide *advance notice* to those inclined to engage in a certain course of conduct that the contemplated action has been forbidden. The majority has pointed to no provision of the law containing specific forewarning to Owners that violation of an oral "walk through" agreement would subject them to dismissal of their lawsuit. To hold that informal oral agreements are subject to penal enforcement serves to undermine the concept of prior notice, such notice being an acknowledged cornerstone of due process.

Neither does the fact that Owners' attorney confirmed the date by letter after receiving a telephone request bring the case within the discovery rules. Those rules, as just quoted, require that a written demand be met by a written response. The written response by the discoveree does not obviate the requirement of a written demand. Furthermore, neither demand nor response was ever filed with the clerk.

By their informal approach, Contractors wholly failed to place Owners upon notice that the proceeding was being controlled by the discovery rules contained within the Texas Rules of Civil Procedure. Owners received no warning that they were subjecting themselves to the penal provisions thereof. Also, Owners contend that there was never any discussion of bringing any experts through the premises, that there was no discussion of any measurements or tests, and that there was no agreement, express or implied, to maintain the premises in status quo pending this "walk through" arrangement. Lacking a written demand or a formal written response, it is difficult to weigh the contentions. Owners further contend that it was necessary to proceed with repairs because, in their view, the property was continuing to deteriorate at a rapid pace. Beyond doubt, the fact that Contractors elected to proceed informally made it harder for the trial court to sort out the contentions of the parties. We suffer with the same problem. The precise

terms and conditions of this oral agreement remain elusive.

The majority argues that the refusal to enforce "voluntary discovery agreements ... would discourage cooperation among parties." The majority has become confused between the concepts of *"voluntary"* and *"informal"*, the distinction is vast, indeed. The rules clearly provide a procedure for voluntary discovery. First, a request that complies with the rules must be made. Rule 167(1)(c). Thereafter, the discoveree must serve a written response. Rule 167(1)(d). If he accedes to the demand, voluntary discovery has been accomplished. If the voluntary discovery agreement be thereafter violated, the full arsenal of penalties may be unleashed. The reason for reversal of the case in hand is not because the agreement was *voluntary;* reversal must be had because of the *informality,* the failure of the discoverer to invoke the rules that circumscribe the penalties sought.

Penalties must always be strictly circumscribed because there will always be one more claimant who seeks to stretch the rules even a little further to accommodate *his case.* What are the outer limits to which the majority will carry the penal provisions of Rule 215? Will a verbal agreement met only by a completely verbal response suffice? Without doubt, the majority opinion will be argued as precedent for such.

If a lawyer in response to a phone call, jots a handwritten memo to his opposition stating that he will make "all of my client's records available next week," and if it later turns out that several of those records have been discarded, will the within opinion stand as precedent for a dismissal? Obviously, it will be so argued because the majority has chosen to tear down the fence that encloses the penalties of Rule 215. Our trial courts will be thrust into the middle of numerous arguments over compliance or non-compliance with informal discovery agreements where, as here, informality makes it difficult, if not impossible to determine with assurance exactly what was agreed to.

Particularly considering that the typical movant for "sanctions" under Rule 215 has much to gain and little to lose by presenting his motion, one can be assured that the majority opinion, if allowed to stand, will not be the last attempt to secure heavy penalties for the failure to fully observe informal agreements to provide information to the opposing party. The implications of enforcing penalties in favor of those who plainly have not fulfilled the express requirements of the discovery rules against those who have not unequivocally violated those rules are sufficiently serious that the temptation to apply subjective notions of substantial justice must be resisted.

In refusing to uphold the heavy penalties that have been exacted for the supposed violation on an informal agreement (We should not refuse to impose penalties because the parties proceeded voluntarily; we should refuse to penalize because the agreement was not reached by following the rules) we do not leave Contractors without recourse. There remains the remedy granted by the Constitution, trial by jury. U.S. CONST.Amend. VII; TEX. CONST., art. V, § 10. Contractors have the right to bring out before a jury that the premises were restored while Contractors were negotiating to inspect the damages complained of. Owners may contend in reply that Contractors had an ample opportunity to inspect in response to numerous complaints that were made even before suit was filed. They may also present their contentions that they acted to prevent further deterioration of the premises. The constitutionally appointed authority for the resolution of factual disputes will decide the matter after a full and plenary hearing, not upon motion and affidavit.[3]

---

3. The majority remarks upon the absence of a statement of facts. However, the dismissal order makes it plain that no evidence was heard on December 3, 1986, except the testimony of Contractors' attorney that notice of hearing was properly given. The court based its decision upon affidavit only. Likewise, the parties concede that the January 12, 1987, hearing was limited to the argument of counsel. Inasmuch as there was no evidence upon the merits of the

For their failure to proceed in accordance with the rules, Contractors may not have the sanctions (penalties) prescribed for wilful violation of the rules. Had Contractors possessed the foresight to serve a written discovery agreement and file it with the clerk as expressly required by the existing rules, they could have claimed the penalties contained in the rules. On the other hand, had Contractors proceeded formally, the likelihood of violation on the part of Owners would have been greatly reduced. Beyond doubt, with the text of a formal written agreement in hand, the trial court's burden in determining if there was wilfulness, or if there was a violation of a discovery agreement at all, would have been greatly reduced. As it is, Contractors still possess the age old recourse of litigants, to contend that the opponent has destroyed or hidden valuable evidence. The resolution of a claim to such effect is historically within the province of the jury. We must leave it there in the present instance because there was no violation of the Texas Rules of Civil Procedure; the rules simply were not invoked.

For such reasons, I dissent. This case should be reversed and remanded.

matter, there was no need for a statement of facts. Under these circumstances, a statement of facts could fulfill no office except to prove that no evidence was heard—a matter that is not in contention.