TERRELL STATE HOSPITAL OF the TEXAS DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION, Relator,

v.

Glen M. ASHWORTH, Judge, 86th Judicial District Court of Kaufman County, Texas, Respondent.

No. 05–90–00585–CV.

Court of Appeals of Texas, Dallas.

Aug. 13, 1990.

---

Maureen Powers, Austin, for relator.

Glen M. Ashworth, pro se.

Before HOWELL, LAGARDE and BURNETT, JJ.

## OPINION

LAGARDE, Justice.

Relator Terrell State Hospital of the Texas Department of Mental Health and Mental Retardation (Terrell) petitions this Court for a writ of mandamus directing the Honorable Glen M. Ashworth, respondent, to vacate his order allowing discovery of a "psychological autopsy" conducted at Terrell. Terrell contends that Judge Ashworth clearly abused his discretion when he found that Terrell had waived the hospital committee privilege, now codified in section 161.032(a) of the Texas Health and

Safety Code.[1] We disagree and, accordingly, deny the petition for writ of mandamus.

On June 16, 1986, Robert Todd Warren, age 16, committed suicide while he was a patient at Terrell. The following day, Terrell's staff met to review the circumstances of Warren's suicide to determine if anything could be learned to prevent similar events in the future. The record of this meeting, which the parties term a "psychological autopsy," is the document at issue in this case. It consists of an apparently verbatim transcript of the meeting and a short summary conclusion.

In the fall of 1986, State Senator Ray Farabee, acting on behalf of Warren's mother, real party in interest Cheryl Jeanne Johnson, sent a list of questions concerning Warren's death to Don Gilbert, Terrell's superintendent. The questions concerned matters such as the hospital's decision to discontinue Warren's medication, the precautions taken against suicide, and the events leading to Warren's death. Gilbert sent a letter to Johnson responding to the questions in Senator Farabee's letter.

Johnson filed suit against Terrell and sought discovery of the psychological autopsy. Terrell objected on the ground that the psychological autopsy was protected from discovery by the hospital committee privilege. After an *in camera* inspection, the trial court denied discovery of the document.

On April 30, 1990, Johnson filed a motion seeking reconsideration of the trial court's order denying discovery of the psychological autopsy. In support of her motion, Johnson attached an excerpt from Gilbert's deposition in which Gilbert indicated that he had reviewed the psychological autopsy before responding to Senator Farabee's letter. Johnson alleged that Gilbert used the psychological autopsy to respond to Senator Farabee and that, consequently, Terrell had waived the hospital committee privilege. The trial court agreed that the privilege was waived and ordered discovery of the psychological autopsy. This mandamus proceeding followed.

■ Section 161.032(a) of the Texas Health and Safety Code provides, "The records and proceedings of a medical committee are confidential and are not subject to court subpoena." TEX.HEALTH & SAFETY CODE ANN. § 161.032(a) (Vernon Pamph. 1990). The purpose of this hospital committee privilege is to improve medical treatment by encouraging open and thorough review and investigation of events within the hospital. *Texarkana Memorial Hosp., Inc. v. Jones*, 551 S.W.2d 33, 35 (Tex.1977). This privilege protects information generated by a hospital committee in its investigation and review process, *Barnes v. Whittington*, 751 S.W.2d 493, 496 (Tex.1988), and it extends to minutes of committee meetings and any final committee product such as recommendations. *Jordan v. Fourth Court of Appeals*, 701 S.W.2d 644, 647–48 (Tex.1988).

In this proceeding, Judge Ashworth found, and the parties do not dispute, that the psychological autopsy was protected by the hospital committee privilege. The issue before us is whether Judge Ashworth clearly abused his discretion in finding that Terrell waived its privilege. Terrell contends that no waiver occurred because the psychological autopsy itself was not disclosed and because Gilbert's review of the document before responding to Senator Farabee's letter did not, by itself, waive the privilege. Terrell also contends that Gilbert's use of the document was within the exercise of a proper committee function and, thus, was not a waiver of the privilege. *See* TEX.HEALTH & SAFETY CODE ANN. § 161.032(b) (Vernon Pamph.1990).

---

1. The hospital committee privilege was previously section 3 of article 4447d of the Texas Revised Civil Statutes. Effective September 1, 1989, the legislature repealed section 3 of article 4447d and reenacted it as sections 161.023, 161.-024, and 161.031 to 161.033 of the Texas Health and Safety Code. This reenactment is intended to make no substantive change in the law. *See* TEX.HEALTH & SAFETY CODE ANN. § 1.001(a) (Vernon Pamph.1990).

We first address Terrell's contention that, absent disclosure of the document itself, Gilbert's conduct is not sufficient to waive the privilege. As Terrell points out, the psychological autopsy itself was not disclosed to Johnson. Gilbert's response to Senator Farabee's letter did include some information and conclusions also found in the psychological autopsy, but the response did not identify the psychological autopsy as their source.

■ Clearly, voluntary disclosure of documents protected by the hospital committee privilege waives the privilege as to the disclosed documents. *Jordan*, 701 S.W.2d at 648–49. The issue here is whether a limited disclosure of the type found in this case is a waiver of the hospital committee privilege as to the underlying document. Although we have found no cases addressing this specific issue, rule 511 of the Texas Rules of Civil Evidence provides some guidance.[2] That rule states, in pertinent part: "A person upon whom these rules confer a privilege against disclosure waives the privilege if (1) he ... voluntarily discloses or consents to disclosure of any significant part of the privileged matter unless such disclosure itself is privileged...." TEX.R. CIV.EVID. 511. Thus, rule 511 allows a partial disclosure of privileged material to result in an implied waiver of the privilege as to additional material that has not been disclosed. *See Texas Employer's Ins. Ass'n. v. Jackson*, 719 S.W.2d 245, 247–48 (Tex.App.—El Paso 1986, writ ref'd n.r.e.) (disclosure of doctor's report during discovery waived privilege as to his testimony at trial). This implied waiver occurs, however, only if the disclosure is of "any significant part" of the privileged material.

■ As was previously mentioned, Gilbert's response to Senator Farabee's letter includes some information and conclusions also contained in the psychological autopsy. Although Gilbert's response to Senator

Farabee's letter does not specifically identify the psychological autopsy as the source for any of the information or conclusions found in the response and although Terrell disputed whether Gilbert in fact reviewed the psychological autopsy before preparing his response, Judge Ashworth could have concluded that Gilbert reviewed the psychological autopsy and that he derived the overlapping information and conclusions from that autopsy. This Court may not grant a petition for writ of mandamus which would require contrary findings of fact. *See Packer v. Fifth Court of Appeals*, 764 S.W.2d 775, 776 (Tex.1989).

To prevail in this proceeding, Terrell must show that Judge Ashworth's order represents a clear abuse of discretion. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* In Johnson's suit against Terrell, one of the primary issues is likely to be whether Terrell was negligent in failing to prevent Warren's suicide. A principal purpose of the psychological autopsy was to allow a retrospective assessment of the circumstances leading to Warren's suicide, and Gilbert's response to Senator Farabee's letter reflects some information, opinions, and conclusions found in the psychological autopsy. Further, the opinions and conclusions expressed in the psychological autopsy represent the type of material that the hospital committee privilege is designed to protect. *See Jordan*, 701 S.W.2d at 647–48 (privilege protects deliberations of a hospital committee); *Barnes*, 751 S.W.2d at 496 (privilege protects information sought out or brought to the attention of the committee for purposes of investigation or review); *but see Texarkana Memorial Hosp., Inc.*, 551 S.W.2d at 36 (privilege does not protect evidence or opinions submitted to the committee if proved by other means). Given these factors, Judge Ash-

---

2. Although rule 511 is expressly applicable only to those privileges conferred by the Rules of Civil Evidence and not to statutory privileges such as the hospital committee privilege, there appears to be no reason to apply a different rule to the hospital committee privilege.

worth could have determined that Gilbert's response disclosed a significant part of the psychological autopsy. On this record, we cannot conclude that this determination represents a clear abuse of discretion.

Terrell cites *National Union Fire Insurance Co. v. Hoffman*, 746 S.W.2d 305 (Tex. App.—Dallas 1988, orig. proceeding), in support of its argument that Gilbert's conduct did not waive the hospital committee privilege as to the psychological autopsy. In *National Union*, Frito–Lay and Pepsico, Inc. (collectively "Frito–Lay") had sued National Union for a declaration that National Union was obligated to defend them in a patent infringement suit. National Union's attorneys prepared a letter to National Union advising it that it had some obligation to defend Frito–Lay. National Union delivered the letter to Frito–Lay, and the parties discussed the letter and the issues it raised. During discovery, Frito–Lay noticed the depositions of the attorneys who had written the letter. The trial court denied National Union's motion to quash, concluding that National Union had waived any attorney-client privilege as to the testimony of the attorneys concerning not only the letter but also "all communications, knowledge and opinions which underlie the matters addressed in the letter." *Id.* at 310–11.

On National Union's petition for writ of mandamus, this Court concluded that National Union had waived its privilege with regard to the letter and possibly other matters. *National Union*, 746 S.W.2d at 311. This Court concluded, however, that the trial court's blanket determination that National Union had waived the attorney-client privilege concerning all matters underlying the letter was a clear abuse of discretion. *Id.* This Court indicated that the scope of National Union's waiver should be determined only within the context of specific inquiry by Frito–Lay and objections by National Union. *Id.*

Our decision in this case is not contrary to *National Union*. This Court's reasoning in *National Union* is consistent with the principle that disclosure of privileged materials can result in an implied waiver of the privilege as to additional, non-disclosed materials. Beyond its holding that the implied waiver is not an automatic, blanket waiver of all underlying materials, *National Union* provides little guidance in determining the scope of this implied waiver. In this case, unlike *National Union*, Judge Ashworth examined the specific item as to which he found Terrell had impliedly waived its privilege. Therefore, *National Union* does not require a finding that Judge Ashworth abused his discretion in the case before us.

Terrell also contends that it has not waived the hospital committee privilege because Gilbert's use of the autopsy to respond to Senator Farabee's letter was a proper committee function. To support this argument, Terrell relies on that portion of the hospital committee privilege which provides, "The records and proceedings may be used by the committee and the committee members only in the exercise of proper committee functions." Tex.Health & Safety Code Ann. § 161.032(b) (Vernon Pamph.1990). The purpose of the staff meeting resulting in the psychological autopsy was to allow the staff to determine whether, in the light of hindsight, Warren's death revealed the need for any changes in Terrell's procedure. Terrell has cited no authority to suggest that responding to the inquiries of a state senator on behalf of Warren's mother, a potential adversary in litigation, represents a "proper committee function," and we have found none. Indeed, the authority that we have found suggests the contrary. *See Jordan*, 701 S.W.2d at 649 (disclosure of documents to grand jury waives hospital committee privilege). Section 161.032(b) does not prevent Gilbert's conduct from constituting a waiver of the privilege.

Having concluded that Terrell has failed to show that Judge Ashworth clearly abused his discretion, we deny Terrell's petition for writ of mandamus.

Dissenting opinion by HOWELL, J.

HOWELL, Justice, dissenting.

I dissent. The majority opinion would badly cripple the statutory privilege:

(1) The fact that hospital personnel reviewed the committee proceedings before responding to the plaintiffs' requests for information did not bar Relator from assertion of its privilege.

(2) As properly defined, there has been no disclosure, voluntary or otherwise, to a third party.

The word "waiver" is one of the most fluid and shifting terms in the legal lexicon. Examples abound where the term has been applied to express consent, implied consent, fraud, estoppel, abandonment, election, ratification, forfeiture, and even as a component of a vaguely-defined policy against overreaching.

What can be better established than the proposition that, during the presentation of evidence at trial, the failure to present a timely and proper objection constitutes a "waiver?" *See, e.g., Adams v. Petrade Int'l, Inc.,* 754 S.W.2d 696, 711 (Tex.App.— Houston [1st Dist.] 1988, writ denied); *see also* Tex.R.App.P. 52(a). However, on analysis, it is clear that the term as used in this context has no relation to consent. Rather, the courts are employing the term "waiver" as a euphemism for the harsh and unpalatable, but extremely accurate and descriptive term, "forfeiture." The concept of an orderly trial requires that a party who is offended must make a prompt and specific objection. Unless such an objection is properly lodged, the objection is in reality *forfeit* rather than "waived."

The majority relies on rule 511 of the Texas Rules of Civil Evidence to support its finding of waiver. That rule provides that a privilege holder waives his privilege if he *"voluntarily* discloses or *consents to* disclosure of any significant part of the privileged matter."* Tex.R.Civ.Evid. 511 (emphasis added). Yet, our majority has paused not a moment to discuss any facts that might indicate any consensual activity. Further, a commonly identified principle

underlying the doctrine of waiver by partial disclosure is the principle of fairness. *In re Von Bulow,* 828 F.2d 94, 102 (5th Cir.1987). The purpose of the doctrine is to prevent prejudice to the opposing party and distortion of the judicial truth finding process that may result from the privilege holder's selective disclosure of privileged material during litigation. *Id.* But the majority has not explored how the alleged partial disclosure might result in misrepresentation of the information or prejudice to the plaintiff. By process of elimination, it follows that the majority has centered entirely upon forfeiture-based waiver. The facts presented reflect no grounds for exacting a forfeiture. *Cf. id.* at 102 (extrajudicial disclosure of a privileged communication not subsequently used in a judicial proceeding to the adversary's prejudice did not waive the privilege as to the undisclosed portions of the communication).

Implicitly, our majority has held that the privilege of hospital committee records is forfeit if they are consulted in any manner in connection with actual, or even potential, litigation based upon the transaction that was the subject of the committee proceedings. They must be sealed away and never consulted, or the privilege is lost.

Even further, it appears that, in this case, the hospital superintendent had no direct knowledge of the incident in question. However, he attended the committee proceedings and presumably heard and saw all that transpired. If he had written the letter on the basis of memory alone, he would still, to the same extent, have been disclosing hospital committee proceedings. The fact that he refreshed his memory, either in the interest of accuracy or for some less commendable purpose, does not obscure the fact that, by necessity, he would have been employing committee proceedings for the purpose of answering the letter, regardless of whether he consulted the written record. If the majority reasoning prevails, any answer to the plaintiff's letter by an official whose knowledge of the incident was through the committee

proceedings would have destroyed the privilege accorded to those proceedings and to the record thereof.

"Waiver" should turn upon the question whether the witness or responding party has expressly identified the committee proceedings as his source of information. Certainly, if someone who has attended hospital committee proceedings responds to an inquiry by spontaneously declaring that the committee proceedings reflect such-and-such, he has placed those proceedings in issue; he has opened the door. Such did not occur in this case. Without *voluntary* disclosure [1] that the source of the information is the committee proceedings, there has been no forfeiture of the privilege.

Forfeitures may only be exacted in pursuance of substantial public considerations. The situation in hand is not at all comparable to the absence of a timely and proper trial objection. The mere fact that a witness, possessed with the legitimated right of access to committee proceedings, may have reviewed those proceedings before testifying does not, of itself, operate to the prejudice of the other party. The privilege need not be terminated thereby, even if in-court testimony is involved. *See Portland Sav. & Loan Ass'n v. Bernstein*, 716 S.W.2d 532, 541 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) (rejecting argument that trial court was required to order disclosure of material reviewed by witness prior to testifying), *cert denied*, 475 U.S. 1016, 106 S.Ct. 1200, 89 L.Ed.2d 313 (1986). Particularly where, as here, the declarant is simply responding to a non-judicial inquiry, there is no logical basis for application of a harsher rule. The law seeks to encourage voluntary disclosure of information pertaining to a disputed matter. *Plorin v. Bedrock Foundation and House Leveling Co.*, 755 S.W.2d 490, 491 (Tex. App.—Dallas 1988, writ denied). The writ

must issue to protect the privilege granted by statute. *See Texarkana Memorial Hosp., Inc. v. Jones*, 551 S.W.2d 33, 36 (Tex.1977) (conditionally granting writ where trial court ordered discovery of material protected by hospital committee privilege).

Furthermore, the disclosure at issue here was not to a third party to the litigation; in the absence of disclosure to a third party, there has been no waiver (*i.e.*, conduct justifying forfeiture). Our majority has not fully read *Jordan v. Fourth Court of Appeals*, 701 S.W.2d 644 (Tex.1985): "If the matter for which a privilege has been sought has been disclosed to a *third party*, ... the party asserting the privilege has the burden of proving that no waiver has occurred." *Id.* at 649 (emphasis added). Here, there has been no third party disclosure; the senator was "acting on behalf of" the decedent's mother, now the plaintiff. She is asserting a bootstrap argument. She is claiming that, inasmuch as the defendant has, in response to her request, arguably given her part of the information contained in the committee report, it is obligated to give her all of it. The claim is a non sequitur.

There is a substantial policy argument to be invoked in favor of forfeiting the privilege if the information has been disclosed to others. Otherwise, the possessor is free to pick and choose those to whom he may make disclosures. No comparable argument may be invoked when the person asserting the waiver is the person to whom the partial disclosure was made. No prejudice to this plaintiff can be hypothesized from the fact that she has arguably received a partial disclosure. There is no basis in law for the claim of "waiver." The writ must issue.

I therefore dissent. Relator is entitled to relief by mandamus from this order which

---

1. Disclosure in response to adverse party examination while serving as a witness is not *voluntary* disclosure. *See Fuentes v. State*, 775 S.W.2d 64, 65–66 (Tex.App.—Houston [1st Dist.] 1989, no pet.) (wife's prior testimony, over her objection and without being informed of privilege, did not waive her privilege not to testify against her husband); *see also* Tex.R.Civ.Evid. 512 (privilege is not defeated by disclosure which is compelled erroneously or made without opportunity to claim privilege).

has no basis in law upon the admitted facts presented to us. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *see also Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (to establish abuse of discretion relator must show that facts and law permit trial court to make only one decision).