UNITED STATES of America,
Plaintiff,

v.

Jesus GONZALEZ–MARICHAL,
Defendant.

No. 03 CR 1692 JM.

United States District Court,
S.D. California.

March 30, 2004.

———

Jason M. Ohta, Esq., San Diego, CA, for Plaintiff.

Steven Barth, Esq., Federal Defenders of San Diego, San Diego, CA, for Defendant.

## ORDER GRANTING MOTION IN LIMINE

MILLER, District Judge.

Defendant moves *in limine* to exclude an unavailable material witness's statement made during custodial interrogation about her alienage on the ground that admission of the statement violates Defendant's Sixth Amendment confrontation rights as recently determined by the Supreme Court in *Crawford v. Washington,* —— U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Government opposes the motion. For the reasons set forth below, the motion *in limine* is granted.

### BACKGROUND

For purposes of this motion only, the following facts appear to be uncontested. On June 1, 2003 United States Border Patrol agents observed Defendant walking north on Andrade Road near the Andrade Port of Entry in the Southern District of California. Defendant walked up to a Ford F–150 pickup, began washing the windows, and continually looked towards the east as if looking for someone. Soon four individuals approached a closed abandoned railroad bridge. They were hunched over as they ran. Defendant gave them a hand signal to enter a small metal shed at the west end of the bridge. They complied and then Defendant waved them forward. At Defendant's instruction, two individuals got into the truck and two got into a Grand Am that was parked nearby. Defendant then drove away.

After a short distance, Border Patrol agents unsuccessfully deployed a tire deflation device. Agents then activated emergency lights and Defendant fled at high speed. After a high-speed freeway chase of short duration, Defendant exited onto the California levee, a raised narrow gravel road used for drainage purposes

which is closed to traffic. Agents followed at a distance and eventually discovered that Defendant's truck had rolled over. The two passengers, both material witnesses, were lying seriously injured on the ground and Defendant was seen running through the brush. Defendant and the material witnesses were arrested. Defendant was charged with two counts of transporting illegal aliens and the material witnesses were returned to Mexico.

One material witness, Yolanda Salazar–Beltran ("Salazar"), suffered a broken leg during the accident. During custodial interrogation she stated that she was a citizen and national of Mexico and that she had made arrangements to pay $1,500 to be smuggled into the United States. She also stated that Defendant directed her into his truck and that he was the driver. When the agents activated the emergency lights and siren, she begged Defendant to yield to the Border Patrol but he drove even faster. The other material witness, Fernando Garcia–Rodriguez, suffered severe head and spinal cord injuries and was released to the Mexican consulate for appropriate medical care.

Defendant now moves to exclude the statements made by Salazar during custodial interrogation.

## DISCUSSION

The issue raised by Defendant arises from the recent Supreme Court decision in *Crawford* which overruled *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In *Ohio v. Roberts*, the Supreme Court concluded that the admission of hearsay statements does not violate the confrontation clause if the government shows that the witness is (1) unavailable and (2) the statement is reliable. *Id.* at 65, 100 S.Ct. 2531. *Crawford* overruled *Ohio v. Roberts* noting that "where testimonial evidence is at issue, [ ], the Sixth Amendment demands what the common law re-

quired: unavailability and a prior opportunity for cross-examination." —— U.S. at ——, 124 S.Ct. at 1373. The Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 1370. Thus, the Supreme Court held that where out-of-court "testimonial" evidence is at issue, the Sixth Amendment does not permit such evidence to be admitted against an accused, regardless of its reliability, unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. The court did not specifically "spell out a comprehensive definition of 'testimonial,'" but held that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Id.*

The petitioner in *Crawford* was convicted of assault. At trial, the state introduced his wife's tape-recorded statement to the police made during custodial interrogation describing events surrounding the husband's stabbing of the victim. While similar, the wife's account of the assault differed in material respects from petitioner's account. The trial court found the wife to be unavailable because of the state's marital privilege rule and admitted the statement under the hearsay exception for statements against penal interest as the wife led petitioner to the victim's apartment, thereby facilitating the assault. Petitioner never had an opportunity to cross-examine his wife.

In deciding the confrontation issue, the Supreme Court engaged in an extended historical analysis of the sources of the Confrontation Clause and concluded that the Confrontation Clause requires the op-

portunity for cross-examination of any out-of-court "testimonial" statement. "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, ... reflects an especially acute concern with a specific type of out-of-court statement," including statements taken by police officers in the course of interrogations. *Id.* at 1364. "Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse—a fact borne out time and again throughout a history with which the Framers were keenly familiar." *Id.* at 1367 n. 7.

In rejecting the *Ohio v. Roberts'* focus on reliability, and not confrontation, the court stated:

> Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined.

*Id.* at 1369. The Supreme Court refused to "replac[e] categorical constitutional guarantees with open-ended balancing tests," *id.* at 1373, explaining that "[d]ispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty." *Id.* at 1365.

In light of *Crawford*, Defendant moves to exclude any statement taken from Salazar by government agents during custodial interrogation as a confrontation violation under the Sixth Amendment. The Government concedes that *Crawford* would generally bar statements of a non-testifying material witness made to an interrogating officer regarding the Defendant's involvement in the underlying smuggling activities. However, the Government argues that statements by Salazar concerning her citizenship and personal and family history are not core testimonial statements and are admissible under the personal history exception of FRE 804(b)(4).

The court has little difficulty concluding that admission of the statements by Salazar relating to her nationality made during the course of custodial interrogation concerning the underlying crimes would violate the Confrontation Clause. Where testimonial evidence is derived from custodial interrogation, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 1374. Here, the statement is undeniably untested by cross-examination and therefore lacking reliability for purposes of the Confrontation Clause. The interrogation of a material witness in a custodial setting directly raises an acute concern: "[i]nvolvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse—a fact borne out time and again throughout history with which the Framers were keenly familiar." *Id.* at 1367 n. 7. "[S]tatements taken by police officers in the course of interrogations are also testimonial" statements. *Id.* at 1364. Notwithstanding, the Government contends that the material witness's statement of nationality is not core testimony and therefore not subject to *Crawford's* Confrontation Clause analysis.

The Government views the statements as to citizenship and alienage as not impli-

cating Defendant "either directly or indirectly.... [arguing that] [t]he statements tell us nothing about whether the Defendant was the driver of the vehicle, whether he arranged for Salazar–Beltran to be in the vehicle, whether he knew her status, or even whether he knew that she was there. Rather, the statements simply satisfy the prerequisites of alienage and illegal status. There is no true dispute as to these prerequisites in this case." (Briefing on *Crawford* at p. 3:22–26).[1]

The court rejects the Government's reasoning that statements about nationality are not core testimonial statements for Confrontation Clause purposes. Defendant is charged in a two count indictment with transportation of illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). One of the elements that must be proved by the Government beyond a reasonable doubt is that Defendant transported an illegal alien within the United States. Thus, a custodial statement by the alleged illegal alien regarding her alienage is material and goes to the heart of the Government's case against Defendant because it proves an element of the offense. While a custodial statement of nationality may be neutral and non-incriminating in the abstract, as applied to Defendant's case, the nationality of the material witness may well determine whether Defendant is incarcerated or released from custody. For Defendant, an untested testimonial statement as to nationality is no less incriminating than a statement that Defendant transported her within the United States. Both statements are core testimonial statements

which prove the elements of the underlying crime. To dispense with the Confrontation Clause under the circumstances would promote, rather than restrict, the "principal evil at which the Confrontation Clause was directed... [the] use of *ex parte* examinations as evidence against the accused." *Id.* at 1363.

Next, the Government contends that the statement of the material witness concerning her citizenship and personal and family history are admissible under Rule 804(b)(4). According to the Government,

the confrontation test refers not to the source of the statement, but its substance. Under *Crawford*, any accusatory or incriminating statement is not admissible without confrontation *regardless* of reliability and regardless of the source of the information. But a statement of personal history of an alien, which is not accusatory and is not made to inculpate a defendant, is admissible, even without confrontation, regardless of the source of the information. (Emphasis in original).

(Briefing on *Crawford* at pp. 6:23–7:2). This argument is unavailing. *Crawford* conditions admissibility of the statements on cross examination to test the reliability of the statements. The Confrontation Clause demands the "opportunity for cross-examination." *Id.* at 1374. In this context, the Confrontation Clause requires the opportunity to cross examine the material witness (i.e. the source of the information) about her nationality (i.e. the substance of the statement).[2] For purposes of cross examination, the source and sub-

---

1. At oral argument, the Government also argued that statements about nationality are not "core testimonial statements" because they are not incriminating and therefore subject to the scrutiny of the Confrontation Clause.

2. The court rejects the Government's suggestions that evidence of family history under FRE 804(b)(4) is more reliable than that at

issue in *Crawford* or that *United States v. Winn*, 767 F.2d 527 (9th Cir.1985) survived *Crawford*. As set forth herein, the Confrontation Clause tests reliability by cross-examination, not family history. Further, *Winn* no longer provides the rules of decision with respect to testimonial evidence as *Winn* applied the discredited reliability test of *Ohio v. Roberts* to the Confrontation Clause issues.

stance of the information are equally important considerations in the fact finding process.

In sum, based upon the categorical approach to testimonial evidence developed in *Crawford*, the court grants the *in limine* motion to exclude the custodial statements of the material witness made during interrogation in the underlying investigation of this case. The court expresses no opinion on whether the nationality of the material witness may be established by other means such as evidence arising from any administrative removal proceeding, her A-file, or other means. The court does not address any other potential means of introducing the same evidence as the Government has not set forth any proffer or any other grounds to admit the evidence.[3]

**IT IS SO ORDERED.**

---

3. The court also expresses no opinion on whether the material witness's statement of her name constitutes testimonial evidence within the meaning of *Crawford*.