William Robert Davis v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-305-CR

WILLIAM ROBERT DAVIS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

OPINION

------------

I. Introduction

A jury convicted Appellant William Robert Davis of capital murder and the trial court sentenced him to life imprisonment after the State waived the death penalty.  In three points, Appellant argues that the trial court erred by  admitting testimony in violation of the husband-wife privilege and the Sixth Amendment of the United States Constitution and by overruling his objections during closing arguments to the State’s allegedly improper comments.  We will affirm.

II.  
Factual Background

Appellant telephoned his mother, who lived in El Paso, at approximately 3:00 o’clock a.m. on December 8, 2001, and told her that there was a dead body in his living room.  Appellant said that he thought he might have killed someone.  Sometime after this call, Appellant’s mother phoned Rebecca Sapien, Appellant’s common law wife who lived in Fort Worth, to ask her to investigate.  Appellant and Sapien did not reside together at the time, but Sapien told Appellant’s mother that Appellant had come to her apartment and was safely sleeping.  Sapien agreed to go to Appellant’s apartment to investigate Appellant’s claims that a body was in his apartment. 

Sapien went to Appellant’s apartment and discovered a woman’s body lying just inside the front door of Appellant’s apartment.  Sapien called 911, and police arrived quickly at the apartment.  Sapien initially told police that Appellant represented to her that he had killed a woman and that her body was inside his apartment.  The dead woman was later identified as Nicole Krienke. Krienke’s autopsy revealed severe bruising to her abdomen, cigarette burns to her eyelids and other parts of her body, and vaginal and rectal tears. The medical examiner ultimately determined the cause of Krienke’s death to be blunt force trauma to her abdomen and chest.

After his arrest, Appellant shared a cell with Derrick Jones.  Appellant told Jones that a black man named Paul had tortured and killed Krienke.  Later, Appellant told Jones that he had killed Krienke while he was on narcotics because she had spent all of his money.  Appellant also told Jones that he was looking for a black man, who was a drug addict, to blame for the crime. Appellant offered Jones money and Whirlpool appliances as compensation if Jones could locate such an individual.  Jones subsequently informed police of Appellant’s statements to him.  

Appellant pleaded not guilty to capital murder.  A jury trial commenced, and during closing arguments the State called Appellant’s contentions that another individual may have committed the murder a “rabbit trail.”  The jury found Appellant guilty of capital murder, and this appeal followed. 

III.  Admissibility Of Ms. Sapien’s Statements To Officer Born

In his first and second points, Appellant argues that the trial court erred by allowing the police officer who initially spoke with Sapien at Appellant’s apartment, Officer Jennifer Born, to testify concerning Sapien’s statements. Appellant claims that Sapien’s statements were inadmissible because they were privileged under the husband-wife privilege and, further, that the admission of Sapien’s statements through Officer Born violated his Sixth Amendment Confrontation Clause rights.  According to the State, Appellant waived the husband-wife privilege and the admission of Officer Born’s testimony concerning Sapien’s statements to her did not violate the Confrontation Clause.
 A.  Standard of Review

We will not disturb a trial court's decision to admit or exclude evidence absent an abuse of discretion.  
Montgomery v. State
, 810 S.W.2d 372, 390-91 (Tex. Crim. App. 1991) (op. on reh'g).  It follows that the admission of evidence is within the sound discretion of the trial court.  
Metts v. State
, 22 S.W.3d 544, 550 (Tex. App.—Fort Worth 2000, pet. ref’d)  If the trial court's ruling is within the zone of reasonable disagreement, we will not disturb it on appeal.  
Id
.  Furthermore, if we can uphold the trial court's decision on any theory applicable to the case, we will do so.  
Id.
; 
see also Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (holding that appellate court should normally defer to trial court's evidentiary rulings).

B.  Confrontation Clause and 
Crawford

The United States Supreme Court revised the analytical framework used to determine the admissibility of hearsay statements in light of a defendant’s Sixth Amendment right to confrontation in 
Crawford v. Washington
, 541 U.S. 36, 124 S. Ct. 1354 (2004).  
There, the Court performed an extensive evaluation of the historical underpinnings of the Confrontation Clause and stated that “[a]lthough the results of our decisions have generally been faithful to the original meaning of the Confrontation Clause, the same cannot be said of our rationales.”  
Id
. at 1369.  After noting the rule in 
Ohio v. Roberts
, which conditioned the admissibility of hearsay evidence on whether it falls within a “firmly rooted hearsay exception” or bears “particularized guarantees of trustworthiness,” the Court reasoned that this approach was inconsistent with the historical and logical purposes surrounding the original intent of the Confrontation Clause.  
See id
.; 
Ohio v. Roberts
, 448 U.S. 56, 66, 100 S. Ct. 2531, 2539 (1980).  In discussing the rule set out in 
Roberts 
and the inherent problems associated therewith, the Court stated that “[w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment’s protection to the vagaries of the rules of evidence, much less to amorphous notions of ‘reliability.’”  
Crawford
, 124 S. Ct. at 1370. 

The Supreme Court in 
Crawford 
adopted a new standard for analyzing the admissibility of out-of-court statements made by an unavailable declarant, placing a heavy emphasis on the testimonial or non-testimonial nature of the statement.  
Id
. at 1374. The Court stated that “[w]here non-testimonial hearsay is at issue, it is wholly consistent with the Framers’ design to afford the States flexibility in their development of hearsay law . . . .”  
Id
.  The Court went on to conclude that “[w]here testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination.”  
Id
.

Thus, the first step required in any Confrontation Clause analysis is a determination of whether the statement is testimonial or non-testimonial.  
See id
.  The Supreme Court in 
Crawford
, however, declined to provide an exhaustive list or definition of what type of statements qualify as “testimonial” statements.
(footnote: 1) 
See id
.  But the Court in 
Crawford
 did recognize that statements made in the following contexts were undisputedly testimonial: 
ex parte
 testimony at a preliminary hearing, testimony before a grand jury, testimony at a former trial, and statements derived from police interrogations.  
See id
.

Notwithstanding the Court’s reluctance to provide an explicit definition of “testimonial,” we find guidance in case law addressing whether a particular statement is testimonial or non-testimonial.  
See
, 
e.g.
, 
State v. Barnes
, 854 A.2d 208, 209 (Me. 2004)
 
(concluding that statements of defendant’s mother, the victim, not given in response to custodial interrogation were non-testimonial);
 People v. Bryant
, No. 247039, 2004 WL 1882661, *1 (Mich. App. Aug. 24, 2004)
 
(holding 
Crawford 
inapplicable because police question of “[w]hat happended” to declarant did not constitute custodial interrogation); 
Leavitt v. Arave
, 383 F.3d 809, 830 n.22 (9th Cir. 2004) (concluding that hearsay statements of unavailable declarant to police and dispatchers were non-testimonial in nature); 
State v. Blackstock
, 598 S.E.2d 412, 419-20 (N.C. Ct. App. 2004) (holding that statements made to family were non-testimonial); 
Evans v. Luebbers
, 371 F.3d 438, 444-45 (8th Cir. 2004) (holding that, assuming 
Crawford 
applied retroactively, hearsay statements by unavailable declarant to multiple witnesses that she feared petitioner, that she had been verbally and physcally abused by petitioner, and that she intended to divorce petitioner were non-testimonial); 
see also
 
United States v. Gonzalez-Marichal
, 317 F. Supp. 2d 1200, 1201-04 (S.D. Cal. 2004) (holding that statements made during custodial interrogation concerning alienage were testimonial and inadmissible under 
Crawford
). 

Officer Born testified that Sapien said Appellant had come to her residence earlier that morning.  Appellant told Sapien that he “had killed a woman and she was inside his apartment.”  The State called Officer Born to testify concerning Appellant’s statements to Sapien because Sapien invoked her privilege not to testify against Appellant, her common law husband, pursuant to the husband-wife privilege.  
See
 
Tex. R. Evid.
 504(b).  The trial court granted Appellant a running objection to Officer Born’s testimony about any of his statements to Sapien while the couple was alone, arguing that such statements were privileged under the husband-wife privilege.  Appellant’s trial counsel also objected on confrontation grounds, arguing that the admission of Officer Born’s statements would violate Appellant’s Sixth Amendment right to confrontation.  The trial court overruled Appellant’s husband-wife-privilege objection; the trial court concluded that because Appellant previously disclosed “basically . . . the same admission” to Ms. Davis, his mother, he did not intend for the information to be confidential under Texas Rule of Evidence 504(a)(1).  
See
 
Tex. R. Evid.
 504(a)(1) (“A communication is confidential if it is made privately by any person to the person’s spouse and it is not intended for disclosure to any other person.”)  The trial court also declined to exclude Officer Born’s statements on confrontation grounds.

We begin our analysis of Appellant’s second point by determining whether Sapien’s statements to Officer Born were testimonial or non-testimonial.  Appellant argues that Sapien’s statements were testimonial in nature: 

The evidence reflects that while Ms. Sapien may have been hysterical (implicating the excited utterance exception to the hearsay rule), nevertheless her statement was made in an interview with Officer Born, an interview that Officer Born was apparently sent to conduct. . . .  For that reason, it was testimonial and the Constitution required that it be subjected to the “crucible of cross examination” or excluded from evidence. 

We cannot agree that Sapien’s statements to Officer Born were testimonial in nature.  Sapien voluntarily called police after discovering the body of Ms. Krienke.  She further voluntarily informed Officer Born of the statements that Appellant made to her.  These statements, while made to an officer, were neither the product of custodial interrogation nor responses to “tactically structured police questioning.”  
See Barnes
, 854 A.2d at 211; 
Bryant
, 2004 WL 1882661, at *1.  Moreover, the record does not reflect that the police considered Sapien to be a suspect, an accomplice, or a co-conspirator.  Thus, the statements by Sapien to Officer Born do not fall within any of the categories of testimonial statements identified in
 Crawford.
  
See Crawford
, 124 S. Ct. at 1374.  Nor do Sapien’s statements to Officer Born appear to be the type of hearsay statements 
Crawford
 intended to exclude.  
Id.  
Accordingly, we hold that the trial court did not abuse its discretion by admitting Officer Born’s testimony concerning Sapien’s statements to her over Appellant’s Confrontation Clause objections.  
See Montgomery
, 810 S.W.2d at 390.  We overrule Appellant’s second point.  

C. 
Husband-Wife Privilege 

In his first point, Appellant argues that the trial court abused its discretion and violated the husband-wife privilege that existed between himself and Sapien when it allowed Officer Born to testify concerning Sapien’s statement to her during the initial discovery and investigation of the incident.

Texas Rule of Evidence 504 provides for the husband-wife privilege.  
Tex. R. Evid.
 504.  It states:

(a) Confidential Communication Privilege.

(1) 
Definition.
  A communication is confidential if it is made privately by any person to the person’s spouse and it is not intended for disclosure to any other person.

(2) 
Rule of privilege.  
A person, whether or not a party, or the guardian or representative of an incompetent or deceased person, has a privilege during marriage and afterwards to refuse to disclose and to prevent another from disclosing a confidential communication made to the person’s spouse while they were married.

Id
.  While, arguably, the primary purpose of the rules of evidence is to exclude unreliable evidence, privileges exist to serve another purpose.  
See Ludwig v. State, 
931 S.W.2d 239, 242 (Tex. Crim. App 1996).  “The basis of the immunity given to communications between husband and wife is the protection of marital confidences, regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails.”  
Wolfle v. United States,
 291 U.S. 7, 14, 54 S. Ct. 279, 280 (1934).

The privilege rules do, however, have their limitations, as is evidenced by Texas Rule of Evidence 511.  Applicable to all of the privileges provided for in the Texas Rules of Evidence, it states, “A person upon whom these rules confer a privilege against disclosure waives the privilege if: (1) the person . . . voluntarily discloses or consents to disclosure of any significant part of the privileged matter . . . .”  
Tex. R. Evid.
 511(1).  Thus, disclosure of “any significant part” of the privileged material waives the privilege.  
See Terrell State Hosp. of Tex. Dep’t of Mental Health & Mental Retardation v. Ashworth,
 794 S.W.2d 937, 940 (Tex. App.—Dallas 1990, orig. proceeding).

We first examine whether Appellant’s statement to his mother constitutes a significant part of his allegedly privileged communication to Sapien.  Appellant’s mother testified to the following:

Q: [Prosecutor] When your son called you, what was he calling you about?

A: [Ms. Davis] He called me and told me that--he said, Mom, there is a body in my living room.  He said, I think I’ve killed someone . . . . 

Officer Born testified to the following statement by Sapien:

Q: [Prosecutor] What did Rebecca Sapien tell you about why you were called out there?

A: [Officer Born] She said that her husband had come home and told her he had killed a woman and she was inside his apartment.

Appellant argues that these two statements are entirely different.  He argues that his statement, “I think I have killed someone,” is more passive in nature than his statement to Sapien, “I killed a woman.”  Appellant argues that his statement to Sapien “is an affirmative statement that he killed a woman.  It gets the gender right and assumes responsibility for the death affirmatively, not speculatively.”  Concerning his statement to his mother, Appellant asserts

that he assumed that he might be responsible for the death since he was alone in the house with the body.  He did not affirmatively say, ‘I killed someone,’ in the sense that he was certain of that fact, but rather that he assumed he might have killed someone from the circumstantial evidence that confronted him.

The State contends that Appellant’s two statements are similar enough to result in a waiver of the husband-wife privilege.  The State argues that it is the subject matter of the statements that is important and not the fact that Appellant first stated that he killed “someone” and then later stated that he killed “a woman.”  The State asserts, “[T]he similarities in the statements far outweigh the differences and are such that there is virtually no room for confusion regarding the subject matter of the communication.”

We agree with the State.  We hold that the two statements made by Appellant are similar enough to result in a waiver of the husband-wife privilege concerning Appellant’s statement to Sapien that he killed a woman.  The “significant part” of Appellant’s statement to Sapien, which he also disclosed to his mother, is the admission that he killed a person and that the person’s body was in his apartment.  Because Appellant communicated a “significant part” of the statement that he made to his wife to a third party—his mother, Ms. Davis—he waived application of the husband wife privilege to his statement to Sapien.  
See 
Tex. R. Evid.
 511(1).  We hold that the trial court did not abuse its discretion when it admitted Officer Born’s testimony concerning Appellant’s statement to Sapien.  We overrule Appellant’s first point.  
See id.
; 
Ashworth
, 794 S.W.2d at 940.

IV.  
Improper Jury Argument

In his third point, Appellant argues that the State engaged in improper jury argument by striking at him over the shoulders of his counsel.  He contends that the State’s arguments constituted a personal attack on trial counsel.  The State maintains that the statements were directly related to evidence presented by Appellant.

The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial in order to arrive at a just and reasonable conclusion based solely on the evidence.  
Barnes v. State
, 70 S.W.3d 294, 308 (Tex. App.—Fort Worth 2002, pet. ref'd).  To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, or (4) plea for law enforcement.  
Felder v. State
, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992),
 cert. denied
, 510 U.S. 829 (1993);  
Alejandro v. State
, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).  
If a jury argument exceeds the bounds of proper argument, the trial court's erroneous overruling of a defendant's objection is not reversible error unless it affected the Appellant’s substantial rights
. 
Tex. R. App. P.
 44.2(b); 
Martinez v. State
, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000); 
Mosley v. State
, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), 
cert. denied
, 526 U.S. 1070 (1999).  
In determining whether the Appellant’s substantial rights were affected, we consider: (1) the severity of the misconduct (i.e., the prejudicial effect of the prosecutor’s remarks), (2) curative measures, and (3) the certainty of conviction absent the misconduct.  
Martinez
, 17 S.W.3d at 692-93; 
Mosley
, 983 S.W.2d at 259.

The State may not strike at a defendant over the shoulders of his counsel or accuse defense counsel of bad faith or insincerity during argument.  
Wilson v. State
, 938 S.W.2d 57, 60 (Tex. Crim. App. 1996), 
abrogated on other grounds by Motilla v. State
, 78 S.W.3d 352 (Tex. Crim. App. 2002).  Uninvited and unsubstantiated accusations of misconduct directed at a defendant's attorney are manifestly improper because they serve to inflame the minds of the jury to the defendant's prejudice.
  McMurrough v. State
, 995 S.W.2d 944, 947 (Tex. App.—Fort Worth 1999, no pet.).  A prosecutor runs a risk of improperly striking a defendant over the shoulder of counsel when the argument personally impugns opposing counsel's character.  
Mosley
, 983 S.W.2d at 259.  However, “[c]ounsel is allowed wide latitude without limitation in drawing inferences from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith.”  
Gaddis v. State, 
753 S.W.2d 396, 398 (Tex. Crim. App. 1988).  Such inferences may be based upon what the jury heard and observed in the courtroom during the presentation of evidence.  
Vaughn v. State
, 607 S.W.2d 914, 923 (Tex. Crim. App. [Panel Op.] 1980).

The State made the following remarks during closing argument of the guilt-innocence phase:

[State] So--and you’ve heard no evidence whatsoever that someone else committed this crime.  There has been no evidence.  I know you heard it at opening statements and the Judge said we will see if it’s backed up.  Well, it wasn’t.  There is no evidence that anybody but this Defendant committed that crime.  And the defense will lay out or show you some rabbit trails to go down and we--

[Defense Counsel] Your Honor, I’m going to object to that as striking at the Defendant over the shoulders or [sic] counsel.

[The Court] Overruled.

[Defense Counsel] And we ask for a running objection.

[The Court] Granted.

[State] They are going to give you the Jack rabbit trail, the Paul rabbit trail, the crack pipe rabbit trail.  We need twelve people to vote unanimously of guilty for capital murder.  We only need one gullible juror to walk down a rabbit trail to get a hung jury.  We need twelve people.  Y’all need to work together.

Here, the record demonstrates that defense counsel introduced evidence giving rise to the possibility that someone other than Appellant murdered Ms. Krienke.  During the cross-examination of Ms. Davis, trial counsel elicited testimony from her that Appellant told her he had met an individual named Jack at a bar.  Defense counsel later elicited testimony from Derrick Jones, Appellant’s cell mate.  Jones testified that Appellant told him that a man named Paul had murdered Ms. Krienke.  Additionally, defense counsel elicited testimony from several witnesses that a crack pipe was found in Appellant’s apartment, possibly raising the inference that it belonged to another.  Because trial counsel for Appellant elicited such testimony, raising the possibility that someone other than Appellant committed the murder, the State was permitted to address and respond to those arguments in its closing argument.  
See Vaughn
, 607 S.W.2d at 923.  Moreover, it does not appear that the statements were made in bad faith or said to personally impugn opposing counsel's character.  
See Gaddis, 
753 S.W.2d at 398; 
Harris v. State,
 122 S.W.3d 871, 883-86 (Tex. App.—Fort Worth 2003, pet. ref’d) (holding that prosecutor’s comments during closing argument were made in response to defendant’s arguments and, therefore, did not strike at Appellant over the shoulder of his counsel).  We overrule Appellant’s third point.

V.  Conclusion

Having overruled each of Appellant’s points, we affirm the trial court judgment.

SUE WALKER

JUSTICE

PANEL B: HOLMAN, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: January 27, 2005

FOOTNOTES
1:
The Court stated, “We leave for another day any effort to spell out a comprehensive definition of ‘testimonial.’”  
Id
.