2004 ME 38

**STATE of Maine**

v.

**Mark BARNES.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 26, 2004.

Decided: March 26, 2004.

---

**2.** Effective January 1, 2004, the "excusable neglect" standard in M.R.App. P. 2(b)(5) changed to a "good cause" standard in M.R.App. P. 2(b)(5)(A).

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Attorney General, Andrew Benson, Asst. Attorney General, Augusta, for State.

Jeffrey M. Silverstein, Esq., Billings & Silverstein, Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] Mark Barnes appeals from a judgment of conviction of murder, 17–A M.R.S.A. § 201 (1983),[1] entered in the Superior Court (Penobscot County, *Mead, J.*) after a jury trial resulting in a guilty ver-

---

1. Since the commission of the crime charged in the present case, the murder statute has been amended. P.L.2001, ch. 383, § 8, *codi-* *fied at* 17–A M.R.S.A. § 201 (Supp.2003) (effective January 31, 2003).

dict. The court sentenced Barnes to sixty-five years in prison.[2]

[¶ 2] The trial record reveals that the victim, Barnes's mother, was discovered brutally murdered in her home. She had suffered blunt force trauma to the face, had a paper towel shoved down her throat, had been strangled, had been stabbed twelve times in the throat, and had been sliced in the abdomen. The police discovered Barnes's bloody fingerprint at the scene and an empty bank envelope and cash wrapper. It was later discovered that Barnes had taken a pair of taxi rides out of Maine, exhibiting bizarre behavior during the rides and paying with $100 bills. Barnes was discovered in New York City more than four months after the crime occurred.

[¶ 3] Barnes contends that the court committed clear error or exceeded the bounds of its discretion in admitting three types of evidence: (1) the victim's statements to the police following a prior attack on her by Barnes; (2) testimony detailing Barnes's violent conduct against police officers in New York City at the time of his arrest; and (3) Barnes's prior statements that he wanted to kill his mother. We conclude that there was no error or abuse of discretion and affirm the judgment.

[¶ 4] The court did not commit clear error or exceed the bounds of its discretion in admitting the victim's statements following the prior attack as excited utterances pursuant to M.R. Evid. 803(2). The passage of time between the startling event and the victim's statement was only one factor for the court to consider in determining whether the statement fell under the excited utterance exception to the hearsay rule. *State v. Robinson*, 2001 ME 83, ¶ 12, 773 A.2d 445, 449. The court's finding that the statement was made under the stress of the startling event is supported by evidence of the victim's demeanor and the short amount of time that passed between the alleged attack and the victim's statement to the police.[3] *See id.* ¶ 14, 773 A.2d at 450 (affirming admission of statement made three to twelve minutes after the startling event); *State v. Hafford*, 410 A.2d 219, 219–20 (Me.1980) (affirming admission of statement made "several minutes" after the startling event).

[¶ 5] The court did not err or exceed the bounds of its discretion in admitting testimony regarding Barnes's conduct during his arrest and shortly after being taken into custody in New York City because, pursuant to Maine Rules of Evidence 401 through 403, "evidence of flight, concealment, or analogous conduct is probative to establish a consciousness of guilt," *State v. Thompson*, 503 A.2d 228, 231 (Me.1986), and Rule 404(b) does not render inadmissible evidence of other crimes, wrongs, or acts if the evidence is offered to demonstrate motive, intent, identity, absence of mistake, or the relationship of the parties, *State v. Turner*, 2001 ME 44, ¶ 5, 766 A.2d 1025, 1026–27.

[¶ 6] Finally, the court did not abuse its discretion in admitting evidence of Barnes's prior threats to kill his mother, pursuant to Maine Rules of Evidence 401 through 403, because the passage of one-and-a-half to three years between the

2. The Sentence Review Panel denied Barnes's petition to appeal the sentence.

3. Following the alleged attack, the witness got in her car and drove to the police station, a trip taking about five to ten minutes. She was sobbing and crying, and had to be calmed down for several minutes before she could speak about the incident. During the conversation, she held on to her chest and said her chest felt heavy, which prompted the officer to call an ambulance for her.

threats and the crime went to the weight of the evidence, not its admissibility. *See State v. Winslow*, 571 A.2d 1198, 1201 (Me. 1990); *see also State v. Ledger*, 444 A.2d 404, 414–15 (Me.1982) (affirming admission of threats and quarrels occurring months before homicide).

The entry is:

Judgment affirmed.