2004 ME 105

**STATE of Maine**

v.

**Mark BARNES**

Supreme Judicial Court of Maine.

Argued: June 8, 2004.

Decided: Aug. 10, 2004.

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Attorney General

(orally), Andrew Benson, Asst. Attorney General, Augusta, for State.

Jeffrey M. Silverstein, Esq. (orally), Billings & Silverstein, Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] Mark Barnes seeks reconsideration of our decision affirming his conviction for the murder of his mother, 17–A M.R.S.A. § 201 (1983)[1] in the Superior Court (Penobscot County, *Mead, J.*) following a jury trial. *See State v. Barnes,* 2004 ME 38, 845 A.2d 575. Barnes contends that the admission of his mother's statements to a police officer following an earlier alleged assault constitutes a violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution pursuant to the recently decided United States Supreme Court case of *Crawford v. Washington,* 541 U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Because we conclude that the admission of the statements does not violate the Confrontation Clause, we deny Barnes's motion for reconsideration.

## I. BACKGROUND

[¶ 2] Barnes's mother was discovered murdered in her apartment on December 21, 1999.[2] Barnes was charged with her murder and pleaded not guilty. Before trial, Barnes moved in limine to exclude testimony including prior statements by Barnes that he wanted to kill his mother. The court denied his motion in limine and admitted the evidence over Barnes's oral objections at trial. Barnes's motion and objections were grounded entirely on the Maine Rules of Evidence.

[¶ 3] In addition to other evidence of prior threats, the jury heard the testimony of a police officer. The officer testified that Barnes's mother drove herself to the police station in March 1998 and came into the station sobbing and crying. She continued crying despite efforts to calm her, and she said that her son had assaulted her and had threatened to kill her more than once during the day. Because she was clutching her chest and indicated a history of heart problems, the officer called an ambulance for her. After a voir dire examination, the court admitted this testimony pursuant to the excited utterance exception to the hearsay rule. M.R. Evid. 803(2). Barnes did not raise a Confrontation Clause objection.

[¶ 4] The jury returned a guilty verdict, the court entered a judgment of conviction, and Barnes appealed. We affirmed the conviction, *Barnes,* 2004 ME 38, 845 A.2d 575, and although the mandate had already been entered on the Superior Court docket, Barnes properly moved for reconsideration "within 14 days after the date of that decision," as required by Rule 14(b) of the Maine Rules of Appellate Procedure. In his motion, he argues that the recently announced United States Supreme Court decision in *Crawford,* 541 U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177, decided on March 8, 2004, requires that his conviction be vacated.

## II. DISCUSSION

### A. Standard of Review

[¶ 5] Even when a claim of error implicates a criminal defendant's constitu-

---

1. Since the commission of the crime charged in the present case, the murder statute has been amended. P.L.2001, ch. 383, § 8, *codified at* 17–A M.R.S.A. § 201 (Supp.2003) (effective January 31, 2003).

2. For a more detailed articulation of the facts, see our earlier opinion in this case: *State v. Barnes,* 2004 ME 38, 845 A.2d 575.

tional rights, if the defendant failed to object at trial, the issue is unpreserved and we will upset the trial court's decision only if the error was obvious. *State v. Knox*, 2003 ME 39, ¶ 5, 819 A.2d 1011, 1013. An error is obvious if it worked a substantial injustice or affected the defendant's substantial rights. *Id.*

### B. Confrontation Clause

██ [¶ 6] Barnes contends that his mother's statements to the police when she reported a crime were testimonial in nature, and, because she was not subjected to cross-examination, their admission violated the Confrontation Clause of the United States Constitution. The State argues that the victim's statements were nontestimonial, and are therefore admissible pursuant to the reasoning of *Crawford*, particularly in light of the obvious error standard of review.

[¶ 7] We address directly the Supreme Court's analysis in *Crawford.* Crawford was convicted of assault and attempted murder for stabbing a man who had allegedly tried to rape his wife. 541 U.S. at ——, 124 S.Ct. at 1356–58. Crawford argued that the trial court violated the Confrontation Clause when it admitted tape-recorded statements made by his wife during a police interrogation under circumstances in which there was no opportunity for cross-examination. *Id.* at ——; 124 S.Ct. at 1356–57. The interrogation took place following Crawford's arrest, and his wife had been read the *Miranda* warnings before the police questioned her. *Id.* at ——, 124 S.Ct. at 1357. She did not testify at trial, claiming marital privilege, but the trial court admitted her statements as statements against penal interest because they were relevant to Crawford's self-defense argument. *Id.* at ——, 124 S.Ct. at

1357–58. The trial court concluded that the admission of the statements did not violate the Sixth Amendment because they bore "adequate indicia of reliability" and "particularized guarantees of trustworthiness," thereby satisfying the test expressed in *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). *Crawford*, 541 U.S. at ——, 124 S.Ct. at 1357–58 (quotation marks omitted). The Washington Supreme Court ultimately affirmed the conviction. *Id.*

[¶ 8] In an opinion rejecting the *Roberts* test for purposes of determining the admissibility of testimonial hearsay, the United States Supreme Court vacated Crawford's conviction, holding that the Confrontation Clause prohibits the admission of "testimonial" statements when the witness is unavailable unless the defendant had the opportunity for cross-examination. *Id.* at ——, 124 S.Ct. at 1374. The Court extensively explored the historical roots of the Confrontation Clause, concluding that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Crawford*, 541 U.S. at ——, 124 S.Ct. at 1363. The civil-law mode of criminal procedure "condone[d] examination in private by judicial officers," and permitted English justices of the peace to "examine[ ] suspects . . . in lieu of live testimony." *Id.* at ——, 124 S.Ct. at 1359. The Court also noted that, pursuant to the Stamp Act, English admiralty courts routinely took colonists' testimony "by deposition or private judicial examination." *Id.* at ——, 124 S.Ct. at 1362. Because the depositions were obtained without the truth-seeking effects of the crucible of cross-examination, they were substantially subject to manipulation and inaccuracy. *Id.* at —— ——, 124

S.Ct. at 1362–63.[3] When such depositions in response to interrogation were then offered against a criminal defendant at trial, in the absence of the deponent, the defendant was effectively tried *in absentia. See id.* Thus, the Supreme Court reasoned that contemporary police interrogations implicate similar concerns about the government's means of eliciting evidence: "The involvement of government officers in the production of testimonial evidence presents the same risk, whether the officers are police or justices of the peace." *Id.* at ——, 124 S.Ct. at 1365.

[¶ 9] Eschewing the previously adopted "reliability" standard regarding testimonial hearsay evidence in favor of an analysis grounded on the opportunity for cross-examination, the Court nonetheless declined to define what types of statements are "testimonial." *Id.* at ——, ——, 124 S.Ct. at 1365, 1374. Rather, it noted that testimony "is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Id.* at ——, 124 S.Ct. at 1364 (quoting 1 N. Webster, *An American Dictionary of the English Language* (1828)). The Court also instructed that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to *police interrogations.*" *Id.* at ——, 124 S.Ct. at 1374 (emphasis added). The Court also declined to define the term "interrogation," but made clear that it "use[d] the term 'interrogation' in its colloquial, rather than any technical legal, sense." *Id.* at —— n. 4, 124 S.Ct. at 1365 n. 4. "Just as various definitions of 'testimonial' exist, one can imagine various definitions of 'interrogation,' and we need not

select among them in this case. [The wife]'s recorded statement, knowingly given in response to structured police questioning, qualifies under any conceivable definition." *Id.*

[¶ 10] We turn then to the statements made by Barnes's mother when she fled his alleged prior assault and drove to the local police station. The *Crawford* analysis applies to evidence of out-of-court testimonial statements by a declarant who is not available at trial. There is no question that Barnes's mother was not available for trial and that the evidence offered consisted of out-of-court statements. Thus, the only question presented is whether the statements at issue were "testimonial" in nature.

[¶ 11] We conclude that they were not. A number of factors support this determination. First, the police did not seek her out. She went to the police station on her own, not at the demand or request of the police. Second, her statements to them were made when she was still under the stress of the alleged assault. Any questions posed to her by the police were presented in the context of determining why she was distressed. Third, she was not responding to tactically structured police questioning as in *Crawford,* but was instead seeking safety and aid. The police were not questioning her regarding known criminal activity and did not have reason, until her own statements were made, to believe that a person or persons had been involved in any specific wrongdoing. Considering all of these facts in their context, we conclude that interaction between Barnes's mother and the officer was not structured police interrogation triggering

---

**3.** The Court emphasized that the Confrontation Clause's "ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commends, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford v. Washington,* 541 U.S. ——, ——, 124 S.Ct. 1354, 1370, 158 L.Ed.2d 177 (2004).

the cross-examination requirement of the Confrontation Clause as interpreted by the Court in *Crawford*.[4] Nor did the victim's words in any other way constitute a "testimonial" statement. *Id.* at ——, 124 S.Ct. at 1364. Accordingly, it was not obvious error for the court to admit the officer's testimony.

[¶ 12] The appropriate application of the principles expressed in *Crawford* will require detailed attention to the specific facts in each case. Here, we hold only that the specific facts of this case do not implicate Confrontation Clause concerns discussed in *Crawford*.

The entry is:

Motion for reconsideration denied.

4. The Ninth Circuit recently reached the same conclusion in determining that *Crawford* did not require the exclusion of a deceased victim's earlier panicked call to the police regarding a prowler. *Leavitt v. Arave*, 371 F.3d 663, 683 n. 22 (9th Cir.2004) (noting that the victim "was in no way being interrogated by [the police] but instead sought their help in ending a frightening intrusion into her home").