COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-305-CR
 
 
WILLIAM 
ROBERT DAVIS                                                       APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
I. Introduction
        A 
jury convicted Appellant William Robert Davis of capital murder and the trial 
court sentenced him to life imprisonment after the State waived the death 
penalty.  In three points, Appellant argues that the trial court erred by 
admitting testimony in violation of the husband-wife privilege and the Sixth 
Amendment of the United States Constitution and by overruling his objections 
during closing arguments to the State’s allegedly improper comments.  We 
will affirm.
II. Factual 
Background
        Appellant 
telephoned his mother, who lived in El Paso, at approximately 3:00 o’clock 
a.m. on December 8, 2001, and told her that there was a dead body in his living 
room.  Appellant said that he thought he might have killed someone.  
Sometime after this call, Appellant’s mother phoned Rebecca Sapien, 
Appellant’s common law wife who lived in Fort Worth, to ask her to 
investigate.  Appellant and Sapien did not reside together at the time, but 
Sapien told Appellant’s mother that Appellant had come to her apartment and 
was safely sleeping.  Sapien agreed to go to Appellant’s apartment to 
investigate Appellant’s claims that a body was in his apartment.
        Sapien 
went to Appellant’s apartment and discovered a woman’s body lying just 
inside the front door of Appellant’s apartment.  Sapien called 911, and 
police arrived quickly at the apartment.  Sapien initially told police that 
Appellant represented to her that he had killed a woman and that her body was 
inside his apartment.  The dead woman was later identified as Nicole 
Krienke.
        Krienke’s 
autopsy revealed severe bruising to her abdomen, cigarette burns to her eyelids 
and other parts of her body, and vaginal and rectal tears.  The medical 
examiner ultimately determined the cause of Krienke’s death to be blunt force 
trauma to her abdomen and chest.
        After 
his arrest, Appellant shared a cell with Derrick Jones.  Appellant told 
Jones that a black man named Paul had tortured and killed Krienke.  Later, 
Appellant told Jones that he had killed Krienke while he was on narcotics 
because she had spent all of his money.  Appellant also told Jones that he 
was looking for a black man, who was a drug addict, to blame for the 
crime.  Appellant offered Jones money and Whirlpool appliances as 
compensation if Jones could locate such an individual.  Jones subsequently 
informed police of Appellant’s statements to him.
        Appellant 
pleaded not guilty to capital murder.  A jury trial commenced, and during 
closing arguments the State called Appellant’s contentions that another 
individual may have committed the murder a “rabbit trail.”  The jury 
found Appellant guilty of capital murder, and this appeal followed.
III. 
Admissibility Of Ms. Sapien’s Statements To Officer Born
        In 
his first and second points, Appellant argues that the trial court erred by 
allowing the police officer who initially spoke with Sapien at Appellant’s 
apartment, Officer Jennifer Born, to testify concerning Sapien’s 
statements.  Appellant claims that Sapien’s statements were inadmissible 
because they were privileged under the husband-wife privilege and, further, that 
the admission of Sapien’s statements through Officer Born violated his Sixth 
Amendment Confrontation Clause rights.  According to the State, Appellant 
waived the husband-wife privilege and the admission of Officer Born’s 
testimony concerning Sapien’s statements to her did not violate the 
Confrontation Clause.
        A. 
Standard of Review
        We 
will not disturb a trial court's decision to admit or exclude evidence absent an 
abuse of discretion.  Montgomery v. State, 810 S.W.2d 372, 390-91 
(Tex. Crim. App. 1991) (op. on reh'g).  It follows that the admission of 
evidence is within the sound discretion of the trial court.  Metts v. 
State, 22 S.W.3d 544, 550 (Tex. App.—Fort Worth 2000, pet. ref’d)  
If the trial court's ruling is within the zone of reasonable disagreement, we 
will not disturb it on appeal.  Id.  Furthermore, if we can 
uphold the trial court's decision on any theory applicable to the case, we will 
do so. Id.; see also Guzman v. State, 955 S.W.2d 85, 89 (Tex. 
Crim. App. 1997) (holding that appellate court should normally defer to trial 
court's evidentiary rulings).
        B. Confrontation Clause and Crawford
        The 
United States Supreme Court revised the analytical framework used to determine 
the admissibility of hearsay statements in light of a defendant’s Sixth 
Amendment right to confrontation in Crawford v. Washington, 541 U.S. 36, 
124 S. Ct. 1354 (2004).  There, the Court performed an extensive evaluation 
of the historical underpinnings of the Confrontation Clause and stated that 
“[a]lthough the results of our decisions have generally been faithful to the 
original meaning of the Confrontation Clause, the same cannot be said of our 
rationales.”  Id. at 1369.  After noting the rule in Ohio 
v. Roberts, which conditioned the admissibility of hearsay evidence on 
whether it falls within a “firmly rooted hearsay exception” or bears 
“particularized guarantees of trustworthiness,” the Court reasoned that this 
approach was inconsistent with the historical and logical purposes surrounding 
the original intent of the Confrontation Clause. See id.; Ohio v. 
Roberts, 448 U.S. 56, 66, 100 S. Ct. 2531, 2539 (1980).  In discussing 
the rule set out in Roberts and the inherent problems associated 
therewith, the Court stated that “[w]here testimonial statements are involved, 
we do not think the Framers meant to leave the Sixth Amendment’s protection to 
the vagaries of the rules of evidence, much less to amorphous notions of 
‘reliability.’”  Crawford, 124 S. Ct. at 1370.
        The 
Supreme Court in Crawford adopted a new standard for analyzing the 
admissibility of out-of-court statements made by an unavailable declarant, 
placing a heavy emphasis on the testimonial or non-testimonial nature of the 
statement.  Id. at 1374.  The Court stated that “[w]here 
non-testimonial hearsay is at issue, it is wholly consistent with the Framers’ 
design to afford the States flexibility in their development of hearsay law . . 
. .”  Id.  The Court went on to conclude that “[w]here 
testimonial evidence is at issue, however, the Sixth Amendment demands what the 
common law required: unavailability and a prior opportunity for cross 
examination.”  Id.
        Thus, 
the first step required in any Confrontation Clause analysis is a determination 
of whether the statement is testimonial or non-testimonial.  See id.  
The Supreme Court in Crawford, however, declined to provide an exhaustive 
list or definition of what type of statements qualify as “testimonial” 
statements.[1] See id.  But 
the Court in Crawford did recognize that statements made in the following 
contexts were undisputedly testimonial: ex parte testimony at a 
preliminary hearing, testimony before a grand jury, testimony at a former trial, 
and statements derived from police interrogations.  See id.
        Notwithstanding 
the Court’s reluctance to provide an explicit definition of “testimonial,” 
we find guidance in case law addressing whether a particular statement is 
testimonial or non-testimonial.  See, e.g., State v. 
Barnes, 854 A.2d 208, 209 (Me. 2004) (concluding that statements of 
defendant’s mother, the victim, not given in response to custodial 
interrogation were non-testimonial); People v. Bryant, No. 247039, 2004 
WL 1882661, *1 (Mich. App. Aug. 24, 2004) (holding Crawford inapplicable 
because police question of “[w]hat happended” to declarant did not 
constitute custodial interrogation); Leavitt v. Arave, 383 F.3d 809, 830 
n.22 (9th Cir. 2004) (concluding that hearsay statements of unavailable 
declarant to police and dispatchers were non-testimonial in nature); State v. 
Blackstock, 598 S.E.2d 412, 419-20 (N.C. Ct. App. 2004) (holding that 
statements made to family were non-testimonial); Evans v. Luebbers, 371 
F.3d 438, 444-45 (8th Cir. 2004) (holding that, assuming Crawford applied 
retroactively, hearsay statements by unavailable declarant to multiple witnesses 
that she feared petitioner, that she had been verbally and physcally abused by 
petitioner, and that she intended to divorce petitioner were non-testimonial); see 
also United States v. Gonzalez-Marichal, 317 F. Supp. 2d 1200, 
1201-04 (S.D. Cal. 2004) (holding that statements made during custodial 
interrogation concerning alienage were testimonial and inadmissible under Crawford).
        Officer 
Born testified that Sapien said Appellant had come to her residence earlier that 
morning. Appellant told Sapien that he “had killed a woman and she was inside 
his apartment.”  The State called Officer Born to testify concerning 
Appellant’s statements to Sapien because Sapien invoked her privilege not to 
testify against Appellant, her common law husband, pursuant to the husband-wife 
privilege.  See Tex. R. Evid. 
504(b).  The trial court granted Appellant a running objection to Officer 
Born’s testimony about any of his statements to Sapien while the couple was 
alone, arguing that such statements were privileged under the husband-wife 
privilege.  Appellant’s trial counsel also objected on confrontation 
grounds, arguing that the admission of Officer Born’s statements would violate 
Appellant’s Sixth Amendment right to confrontation.  The trial court 
overruled Appellant’s husband-wife-privilege objection; the trial court 
concluded that because Appellant previously disclosed “basically . . . the 
same admission” to Ms. Davis, his mother, he did not intend for the 
information to be confidential under Texas Rule of Evidence 504(a)(1).  See 
Tex. R. Evid. 504(a)(1) (“A 
communication is confidential if it is made privately by any person to the 
person’s spouse and it is not intended for disclosure to any other 
person.”)  The trial court also declined to exclude Officer Born’s 
statements on confrontation grounds.
        We 
begin our analysis of Appellant’s second point by determining whether 
Sapien’s statements to Officer Born were testimonial or non-testimonial.  
Appellant argues that Sapien’s statements were testimonial in nature:
  
The evidence reflects that while Ms. Sapien may have been hysterical 
(implicating the excited utterance exception to the hearsay rule), nevertheless 
her statement was made in an interview with Officer Born, an interview that 
Officer Born was apparently sent to conduct. . . . For that reason, it was 
testimonial and the Constitution required that it be subjected to the 
“crucible of cross examination” or excluded from evidence.
 
We 
cannot agree that Sapien’s statements to Officer Born were testimonial in 
nature.  Sapien voluntarily called police after discovering the body of Ms. 
Krienke.  She further voluntarily informed Officer Born of the statements 
that Appellant made to her.  These statements, while made to an officer, 
were neither the product of custodial interrogation nor responses to 
“tactically structured police questioning.”  See Barnes, 854 
A.2d at 211; Bryant, 2004 WL 1882661, at *1.  Moreover, the record 
does not reflect that the police considered Sapien to be a suspect, an 
accomplice, or a co-conspirator.  Thus, the statements by Sapien to Officer 
Born do not fall within any of the categories of testimonial statements 
identified in Crawford. See Crawford, 124 S. Ct. at 1374.  
Nor do Sapien’s statements to Officer Born appear to be the type of hearsay 
statements Crawford intended to exclude.  Id. Accordingly, 
we hold that the trial court did not abuse its discretion by admitting Officer 
Born’s testimony concerning Sapien’s statements to her over Appellant’s 
Confrontation Clause objections.  See Montgomery, 810 S.W.2d at 
390.  We overrule Appellant’s second point.
        C. 
Husband-Wife Privilege
        In 
his first point, Appellant argues that the trial court abused its discretion and 
violated the husband-wife privilege that existed between himself and Sapien when 
it allowed Officer Born to testify concerning Sapien’s statement to her during 
the initial discovery and investigation of the incident.
        Texas 
Rule of Evidence 504 provides for the husband-wife privilege. Tex. R. Evid. 504.  It states:

                (a) 
Confidential Communication Privilege.
 
(1) 
Definition. A communication is confidential if it is made privately by 
any person to the person’s spouse and it is not intended for disclosure to any 
other person.
 
(2) 
Rule of privilege. A person, whether or not a party, or the guardian or 
representative of an incompetent or deceased person, has a privilege during 
marriage and afterwards to refuse to disclose and to prevent another from 
disclosing a confidential communication made to the person’s spouse while they 
were married.
 
Id.  
While, arguably, the primary purpose of the rules of evidence is to exclude 
unreliable evidence, privileges exist to serve another purpose.  See 
Ludwig v. State, 931 S.W.2d 239, 242 (Tex. Crim. App 1996).  “The 
basis of the immunity given to communications between husband and wife is the 
protection of marital confidences, regarded as so essential to the preservation 
of the marriage relationship as to outweigh the disadvantages to the 
administration of justice which the privilege entails.”  Wolfle v. 
United States, 291 U.S. 7, 14, 54 S. Ct. 279, 280 (1934).
        The 
privilege rules do, however, have their limitations, as is evidenced by Texas 
Rule of Evidence 511.  Applicable to all of the privileges provided for in 
the Texas Rules of Evidence, it states, “A person upon whom these rules confer 
a privilege against disclosure waives the privilege if: (1) the person . . . 
voluntarily discloses or consents to disclosure of any significant part of the 
privileged matter . . . .” Tex. R. Evid. 511(1).  Thus, 
disclosure of “any significant part” of the privileged material waives the 
privilege.  See Terrell State Hosp. of Tex. Dep’t of Mental Health 
& Mental Retardation v. Ashworth, 794 S.W.2d 937, 940 (Tex. 
App.—Dallas 1990, orig. proceeding).
        We 
first examine whether Appellant’s statement to his mother constitutes a 
significant part of his allegedly privileged communication to Sapien. 
Appellant’s mother testified to the following:
 
Q: [Prosecutor] When your son called you, what was he calling you about?
 
A: 
[Ms. Davis] He called me and told me that--he said, Mom, there is a body in my 
living room.  He said, I think I’ve killed someone . . . .
 
Officer 
Born testified to the following statement by Sapien:
  
Q: 
[Prosecutor] What did Rebecca Sapien tell you about why you were called out 
there?
 
A: 
[Officer Born] She said that her husband had come home and told her he had 
killed a woman and she was inside his apartment.
 
        Appellant 
argues that these two statements are entirely different.  He argues that 
his statement, “I think I have killed someone,” is more passive in nature 
than his statement to Sapien, “I killed a woman.” Appellant argues that his 
statement to Sapien “is an affirmative statement that he killed a woman. It 
gets the gender right and assumes responsibility for the death affirmatively, 
not speculatively.”  Concerning his statement to his mother, Appellant 
asserts
 
that he assumed that he might be responsible for the death since he was alone in 
the house with the body.  He did not affirmatively say, ‘I killed 
someone,’ in the sense that he was certain of that fact, but rather that he 
assumed he might have killed someone from the circumstantial evidence that 
confronted him.
 
        The 
State contends that Appellant’s two statements are similar enough to result in 
a waiver of the husband-wife privilege.  The State argues that it is the 
subject matter of the statements that is important and not the fact that 
Appellant first stated that he killed “someone” and then later stated that 
he killed “a woman.”  The State asserts, “[T]he similarities in the 
statements far outweigh the differences and are such that there is virtually no 
room for confusion regarding the subject matter of the communication.”
        We 
agree with the State.  We hold that the two statements made by Appellant 
are similar enough to result in a waiver of the husband-wife privilege 
concerning Appellant’s statement to Sapien that he killed a woman.  The 
“significant part” of Appellant’s statement to Sapien, which he also 
disclosed to his mother, is the admission that he killed a person and that the 
person’s body was in his apartment.  Because Appellant communicated a 
“significant part” of the statement that he made to his wife to a third 
party—his mother, Ms. Davis—he waived application of the husband wife 
privilege to his statement to Sapien.  See Tex. R. Evid. 511(1).  We hold that 
the trial court did not abuse its discretion when it admitted Officer Born’s 
testimony concerning Appellant’s statement to Sapien.  We overrule 
Appellant’s first point.  See id.; Ashworth, 794 S.W.2d at 
940.
IV. Improper 
Jury Argument
        In 
his third point, Appellant argues that the State engaged in improper jury 
argument by striking at him over the shoulders of his counsel.  He contends 
that the State’s arguments constituted a personal attack on trial 
counsel.  The State maintains that the statements were directly related to 
evidence presented by Appellant.
        The 
purpose of closing argument is to facilitate the jury's proper analysis of the 
evidence presented at trial in order to arrive at a just and reasonable 
conclusion based solely on the evidence.  Barnes v. State, 70 S.W.3d 
294, 308 (Tex. App.—Fort Worth 2002, pet. ref'd).  To be permissible, the 
State's jury argument must fall within one of the following four general areas: 
(1) summation of the evidence, (2) reasonable deduction from the evidence, (3) 
answer to argument of opposing counsel, or (4) plea for law enforcement.  Felder 
v. State, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), cert. denied, 
510 U.S. 829 (1993); Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. 
App. 1973).  If a jury argument exceeds the bounds of proper argument, the 
trial court's erroneous overruling of a defendant's objection is not reversible 
error unless it affected the Appellant’s substantial rights.  Tex. R. App. P. 44.2(b); Martinez v. 
State, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000); Mosley v. State, 
983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), cert. denied, 
526 U.S. 1070 (1999).  In determining whether the Appellant’s substantial 
rights were affected, we consider: (1) the severity of the misconduct (i.e., the 
prejudicial effect of the prosecutor’s remarks), (2) curative measures, and 
(3) the certainty of conviction absent the misconduct.  Martinez, 17 
S.W.3d at 692-93; Mosley, 983 S.W.2d at 259.
        The 
State may not strike at a defendant over the shoulders of his counsel or accuse 
defense counsel of bad faith or insincerity during argument.  Wilson v. 
State, 938 S.W.2d 57, 60 (Tex. Crim. App. 1996), abrogated on other 
grounds by Motilla v. State, 78 S.W.3d 352 (Tex. Crim. App. 2002).  
Uninvited and unsubstantiated accusations of misconduct directed at a 
defendant's attorney are manifestly improper because they serve to inflame the 
minds of the jury to the defendant's prejudice.  McMurrough v. State, 
995 S.W.2d 944, 947 (Tex. App.—Fort Worth 1999, no pet.).  A prosecutor 
runs a risk of improperly striking a defendant over the shoulder of counsel when 
the argument personally impugns opposing counsel's character.  Mosley, 
983 S.W.2d at 259.  However, “[c]ounsel is allowed wide latitude without 
limitation in drawing inferences from the evidence so long as the inferences 
drawn are reasonable, fair, legitimate, and offered in good faith.”  Gaddis 
v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).  Such inferences 
may be based upon what the jury heard and observed in the courtroom during the 
presentation of evidence.  Vaughn v. State, 607 S.W.2d 914, 923 
(Tex. Crim. App. [Panel Op.] 1980).
        The 
State made the following remarks during closing argument of the guilt-innocence 
phase:
 
[State] So--and you’ve heard no evidence whatsoever that someone else 
committed this crime. There has been no evidence. I know you heard it at opening 
statements and the Judge said we will see if it’s backed up. Well, it 
wasn’t. There is no evidence that anybody but this Defendant committed that 
crime. And the defense will lay out or show you some rabbit trails to go down 
and we--
 
[Defense 
Counsel] Your Honor, I’m going to object to that as striking at the Defendant 
over the shoulders or [sic] counsel.
 
[The 
Court] Overruled.
 
[Defense 
Counsel] And we ask for a running objection.
 
[The 
Court] Granted.
 
[State] 
They are going to give you the Jack rabbit trail, the Paul rabbit trail, the 
crack pipe rabbit trail. We need twelve people to vote unanimously of guilty for 
capital murder. We only need one gullible juror to walk down a rabbit trail to 
get a hung jury. We need twelve people. Y’all need to work together.
  
        Here, 
the record demonstrates that defense counsel introduced evidence giving rise to 
the possibility that someone other than Appellant murdered Ms. Krienke.  
During the cross-examination of Ms. Davis, trial counsel elicited testimony from 
her that Appellant told her he had met an individual named Jack at a bar.  
Defense counsel later elicited testimony from Derrick Jones, Appellant’s cell 
mate. Jones testified that Appellant told him that a man named Paul had murdered 
Ms. Krienke.  Additionally, defense counsel elicited testimony from several 
witnesses that a crack pipe was found in Appellant’s apartment, possibly 
raising the inference that it belonged to another.  Because trial counsel 
for Appellant elicited such testimony, raising the possibility that someone 
other than Appellant committed the murder, the State was permitted to address 
and respond to those arguments in its closing argument.  See Vaughn, 
607 S.W.2d at 923. Moreover, it does not appear that the statements were made in 
bad faith or said to personally impugn opposing counsel's character.  See 
Gaddis, 753 S.W.2d at 398; Harris v. State, 122 S.W.3d 871, 883-86 
(Tex. App.—Fort Worth 2003, pet. ref’d) (holding that prosecutor’s 
comments during closing argument were made in response to defendant’s 
arguments and, therefore, did not strike at Appellant over the shoulder of his 
counsel).  We overrule Appellant’s third point.
V. Conclusion
        Having 
overruled each of Appellant’s points, we affirm the trial court judgment.
   
 
                                                                  SUE 
WALKER
                                                                  JUSTICE
  
  
PANEL 
B:   HOLMAN, WALKER, and MCCOY, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
January 27, 2005


NOTES
1.  
The Court stated, “We leave for another day any effort to spell out a 
comprehensive definition of ‘testimonial.’”  Id.