2012 ME 86

STATE of Maine

v.

Bradley W. LEMAY.

Supreme Judicial Court of Maine.

Argued: April 13, 2012.

Decided: July 3, 2012.

Christopher K. MacLean, Esq., and Sarah Irving Gilbert, Esq. (orally), Elliott & MacLean, LLP, Camden, for appellant Bradley W. Lemay.

Christopher Fernald, Asst. Dist. Atty. (orally), Prosecutorial District Six, Rockland, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SILVER, J.

[¶ 1] Bradley W. Lemay appeals from judgments of conviction for gross sexual assault (Class A), 17–A M.R.S. § 253(1)(A) (2011); criminal threatening with a dangerous weapon (Class C), 17–A M.R.S. §§ 209(1), 1252(4) (2011); eluding an officer (Class C), 29–A M.R.S. § 2414(3) (2011); attempted escape (Class D), 17–A M.R.S. §§ 152(1)(D), 755(1)(A) (2011); and tampering with a victim (Class B), 17–A M.R.S. § 454(1–B)(A)(2) (2011), entered in the Superior Court (Knox County, *Hjelm, J.*) following a jury trial. The charges stem from three events that occurred on three different dates. Lemay argues that the court abused its discretion by joining the matters for trial pursuant to M.R.Crim. P. 8(a), and by subsequently denying his motion for relief from prejudi-

cial joinder pursuant to M.R.Crim. P. 8(d). We affirm the judgment.

## I. BACKGROUND

■ [¶ 2] We view the evidence admitted at trial in the light most favorable to the State. *State v. Medeiros*, 2010 ME 47, ¶ 16, 997 A.2d 95.

[¶ 3] On the evening of June 8, 2010, Bradley W. Lemay entered the home of the victim, whom he knew as a client of the landscaping company for which he worked. He threatened her and sexually assaulted her, initially at knifepoint, and injured her by giving her a black eye. Immediately after Lemay left the victim's residence, she called 911 to report that she had been raped.

[¶ 4] A responding police officer spotted Lemay's vehicle while en route to the victim's home, but was unable to keep track of it because Lemay shut off his lights and drove over the lawn of a home about one block from the victim's residence. Once the officer was able to locate the vehicle he began to pursue it with his sirens on, initially at a speed between forty and forty-five miles per hour. Lemay sped up, and a twenty-minute pursuit followed during which Lemay failed to stop at stop signs, nearly collided with another vehicle, drove on the wrong side of the road, drove the wrong way down a one-way street, and traveled at speeds between sixty and one hundred miles per hour in thirty- to forty-mile-per-hour zones. The police eventually deployed a spike mat that caused Lemay to lose control of the vehicle. He came to a stop after crashing into some shrubs, and the police apprehended him.

[¶ 5] On June 10, 2010, Lemay was charged with gross sexual assault (Class A), 17–A M.R.S. § 253(1)(A) (2011); burglary (Class B), 17–A M.R.S. § 401(1)(B)(4) (2011); aggravated assault

(Class B), 17–A M.R.S. § 208(1)(B) (2011); criminal threatening with a dangerous weapon (Class C), 17–A M.R.S. §§ 209(1), 1252(4) (2011); aggravated criminal trespass (Class C), 17–A M.R.S. § 402–A(1)(A) (2011); and eluding an officer (Class C), 29–A M.R.S. § 2414(3) (2011).

[¶ 6] After being charged, Lemay was held in pretrial detention in the Knox County jail. On July 2, 2010, he was caught climbing the barbed-wire fence enclosing the recreation yard. His hands were lacerated by the barbed wire and he injured his ankle in the course of jumping off the fence back into the yard. After Lemay was treated by the medical personnel at the jail, the lieutenant of programs and services asked him why he attempted to climb the fence. In response, Lemay made a statement "about trying to hide" and stated, "I'm never, ever going back to prison."

[¶ 7] On or around July 22, 2010, Lemay sent his brother a letter from jail. The letter included the victim's name, phone number, and address, and stated that "we need to threaten her in some way to get her to drop the charges and recant her story." The letter instructed the brother to buy a disposable cell phone with cash; call the victim from that phone to demand that she recant her story and tell "the truth"; offer her up to $150,000 as a "ploy to get her to tell the truth"; and "tell her if she doesn't cooperate that something terrible [is] going to happen to her," that "she'll be hurt" if she does "anything stupid," and that "the police won't be able to protect her always if she doesn't cooperate." It directed the brother to be "strong and aggressive" in order to "make the threat sound real" and to emphasize to the victim that she was being "watched at all times." The letter then instructed the brother to throw the cell phone in a lake after the phone call. Lemay also proclaimed his innocence in the letter and

reiterated that he did not want to go back to jail for something he did not do.

[¶ 8] On August 11, 2010, Lemay was charged with attempted escape (Class D), 17–A M.R.S. §§ 152(1)(D), 755(1)(A), for the prison-yard incident that took place on July 2. On August 25, 2010, he was charged with tampering with a victim (Class B), 17–A M.R.S. § 454(1–B)(A)(2), for the letter he sent on or around July 22.

[¶ 9] Before trial the State filed a motion to join all charges for trial pursuant to M.R.Crim. P. 8(a), and Lemay filed an objection. Lemay also filed two motions to suppress. One motion sought to suppress his statements about "trying to hide" following his attempted escape because he was not advised of his Miranda rights prior to being questioned by prison personnel. The other motion sought to suppress statements that Lemay made to police during an interrogation about the letter to his brother; Lemay does not appeal from the court's ruling on that motion.

[¶ 10] At a hearing on the motions the court (*Hjelm, J.*) granted the State's motion to join all matters for trial. The court found a "very substantial" connection between the charges related to the gross sexual assault and the tampering charge. The court found a more tenuous but still reasonable connection between the charges related to the gross sexual assault and the attempted escape based on Lemay's statement that he wanted to escape in order to hide, and further found that eluding an officer and attempted escape are similar crimes. The court noted that evidence of both the attempted escape and tampering with a victim would be admissible at a trial for the charges related to the gross sexual assault as proof of Lemay's culpability, and that a limiting instruction to the jury would mitigate the potential for prejudice.

[¶ 11] Following the hearing the court issued separate written orders on the two

suppression motions. In the order relevant to this appeal, the court partially granted Lemay's motion to suppress statements regarding the attempted escape because he made the statements in custody and was not advised of his Miranda rights. The court ordered that the statements be excluded from evidence in the State's case-in-chief, but allowed the State to use the statements to impeach Lemay if he testified at trial because he made the statements voluntarily.

[¶ 12] Lemay then filed a motion for relief from prejudicial joinder pursuant to M.R.Crim. P. 8(d), arguing that the suppression of the statements relating to the escape warranted relief from joinder because those statements provided the only connection between the charges related to the gross sexual assault and the escape. Lemay did not argue for severance of the tampering charge from the charges related to the gross sexual assault, only for severance of the escape charge from the charges related to the gross sexual assault and the tampering charge. The court denied the motion, reiterating that evidence of the attempted escape would be admissible at a trial for the charges related to the gross sexual assault as probative of a consciousness of guilt, even without the suppressed statements. The court noted that even if the defendant were to testify in separate trials, the suppressed statements regarding the attempted escape would be admissible on cross-examination. The court also noted that the risk of prejudice would be minimized by proper jury instructions.

[¶ 13] During the trial Lemay made a motion to limit the scope of evidence admissible to cross-examine or impeach Lemay's testimony, should he decide to testify. Lemay asked the court to allow him to testify on the charges related to the gross sexual assault, but to prevent the State from cross-examining him on the tampering and attempted escape charges, or at least on the attempted escape charge. The court ruled that the tampering and attempted escape charges were a proper subject of cross-examination whether or not Lemay testified about them on direct examination because "that alleged conduct has a direct bearing on" the charges related to the gross sexual assault, and "this would be true whether or not there was joinder[ ]." The court also ruled that, with a limiting instruction, evidence of Lemay's prior criminal conduct[1] would be a proper subject of cross-examination to test Lemay's statements to police, during his interview, that he "wouldn't" have put a knife in the victim's face. Lemay chose not to testify.

[¶ 14] The court gave several relevant instructions to the jury. At the outset the court stated:

> [T]here will be one trial but the trial will encompass those eight charges, but ultimately you will be asked to evaluate the evidence and the instructions that I will give you separately and independently

---

1. In 1989 Lemay pleaded guilty to kidnapping (Class A), 17–A M.R.S.A. § 301(1)(A)(3) (1983); gross sexual misconduct (Class A), 17–A M.R.S.A. § 253(1) (Supp.1988); burglary (Class B), 17–A M.R.S.A. § 401(1) (1983); two counts of criminal threatening with a dangerous weapon (Class C), 17–A M.R.S.A. §§ 209(1), 1252(4) (1983); and two counts of assault (Class D), 17–A M.R.S.A. § 207(1) (1983). Lemay was sentenced to consecutive twenty-year terms of imprisonment, with five years on one of the sentences suspended, plus six years of probation. He served twenty-two years in prison and was released in February 2010, four months before the assault at issue in this case. The record does not establish the facts giving rise to these charges, but it does suggest that the circumstances were substantially similar to those in this case and that there are additional convictions in Lemay's criminal history involving similar conduct.

with respect to those eight counts and then reach a separate and independent conclusion count by count as to whether or not the State has proven its allegations beyond a reasonable doubt.

The court later instructed the jury:

You must not infer guilt because of the number of charges. You must consider each charge independently. You may find the defendant guilty of all charges, not guilty of all charges, or guilty of some charges and not guilty of others. You must consider the evidence and the instructions separately as to each charge and reach a separate decision as to whether the State has proven each charge beyond a reasonable doubt.

The court also instructed the jury that each of the eight separate counts required a verdict of guilty or not guilty, and that the jury must return a verdict of not guilty "on any particular charge" for which the State failed to meet its burden and guilty "on any particular charge" for which the State did meet its burden.

[¶ 15] The jury found Lemay guilty of gross sexual assault, criminal threatening with a dangerous weapon, eluding an officer, tampering with a victim, and attempted escape. The court sentenced him to fifty-five years for gross sexual assault, five years for criminal threatening, five years for eluding an officer, ten years for tampering with a victim, and 364 days for attempted escape. All of the sentences are concurrent with each other and consecutive to any sentence remaining on his prior conviction for gross sexual misconduct. No portion of the sentence was suspended.

[¶ 16] Lemay timely appealed the judgment.

## II. DISCUSSION

[¶ 17] On appeal, Lemay argues that the court abused its discretion by joining all charges for trial pursuant to M.R.Crim. P. 8(a), and by subsequently denying his motion for relief from prejudicial joinder pursuant to M.R.Crim. P. 8(d). Lemay argues that joinder was improper with respect to all three sets of charges. His challenge to the court's refusal to sever the charges focuses on the alleged prejudice caused by joining the escape charge with the charges related to the gross sexual assault and the tampering charge.

### A. Joinder

⬛ [¶ 18] Pursuant to M.R.Crim. P. 8(c), "[t]he court may order two or more indictments, informations, or complaints to be tried together against a single defendant if the crimes should have been joined under paragraph (a)." Paragraph (a) provides that "[t]wo or more crimes should be charged in the same indictment . . . if the crimes charged, whether of the same class or different classes, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions which are connected or which constitute parts of a common scheme or plan." M.R.Crim. P. 8(a). The trial court is given "wide discretion" in determining whether to join charges for trial, and its decision is reviewed for an abuse of that discretion. *State v. Pierce*, 2001 ME 14, ¶ 12, 770 A.2d 630 (quotation marks omitted). We interpret Rule 8(a) broadly and will uphold joinder if "the offenses charged are connected in any reasonable manner." *See id.* ¶ 13 (quotation marks omitted).

⬛ [¶ 19] The propriety of joining the tampering charge with the charges related to the gross sexual assault is beyond question. In arguing that his admissions about attempting to prevent the victim from testifying should be suppressed, Lemay argued that a police interrogation about the letter to his brother was necessarily "completely intertwined with the gross sexual

assault allegation," and that the letter was "completely part and parcel with the gross sexual assault case." He further argued, "there's almost no way that these two acts are unrelated.... The only difference is that the elements of the crime itself are different, but the ... underlying subject matter is exactly the same." We agree that Lemay's tampering and his assaults on the victim were clearly related and conclude that joinder was proper.

■ [¶ 20] Lemay's attempted escape is also related to the charges stemming from the gross sexual assault. His actions occurred within a month of each other, the custody from which he tried to escape was a direct result of the prior charges, and he was motivated by a desire to avoid prosecution on those charges. *See United States v. Kinsella*, 530 F.Supp.2d 356, 360 (D.Me.2008). Moreover, eluding an officer and attempted escape are clearly charges of the same or similar character, regardless if one occurs prior to being charged and one occurs after.

[¶ 21] Contrary to Lemay's contention, the connection between the charges was not diminished when the court ordered the statements that explicitly linked them to be suppressed. Even without evidence of Lemay's statements about "trying to hide" and wanting to avoid going back to jail, evidence of flight permits the jury to infer—properly, in this case—a consciousness of guilt or that the defendant was motivated by a desire to avoid prosecution for the underlying charges. *See State v. Barnes*, 2004 ME 38, ¶ 5, 845 A.2d 575; *see also* Alexander, *Maine Jury Instruction Manual* § 6–39 at 6–58 (4th ed. 2012) (noting that intent ordinarily must be inferred from surrounding circumstances).

Therefore the charges were properly joined.

**B. Relief from Joinder**

■ [¶ 22] Even where joinder is otherwise proper, M.R.Crim. P. 8(d)[2] authorizes the motion justice to order separate trials of offenses if it appears that the defendant is prejudiced by an otherwise-appropriate joinder of offenses. *Pierce,* 2001 ME 14, ¶ 17, 770 A.2d 630. We construe Rule 8(d) liberally in order to adequately protect the defendant from undue prejudice. *See id.* ¶¶ 17, 20. Nonetheless, we review the court's decision to deny a motion for severance for an abuse of discretion and will not vacate a decision to deny a motion "unless the case is one in which the potential for confusion or prejudice is obviously serious." *Id.* ¶ 12 (quotation marks omitted).

■ [¶ 23] The trial court is required to balance the advantages that result from joinder—namely, judicial economy and swift resolution for the defendant—against the potential for prejudice to the defendant. *Id.* ¶ 17. Three types of prejudice can arise from a joinder of charges:

(1) the defendant may become embarrassed or confounded in presenting separate defenses; (2) proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissible in a separate trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testi-

---

2. M.R.Crim. P. 8(d) provides:
   **Relief From Prejudicial Joinder.** If it appears that a defendant or the state is prejudiced by a joinder of offenses against a single defendant or by the joinder of defen-
   dants, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires, including ordering multiple simultaneous trials.

fying as to both or testifying as to neither.

*United States v. Jordan,* 112 F.3d 14, 16 (1st Cir.1997) (quotation marks omitted). Lemay argues the latter two types of prejudice.

■ [¶ 24] Lemay first argues that, when aggregated, the number and type of charges are suggestive of a propensity to commit crime, which is prohibited pursuant to M.R. Evid. 404(b).[3] However, the sheer number of charges or the possibility of juror confusion is not inherently prejudicial. *See State v. Brown,* 1998 ME 129, ¶¶ 6–8, 712 A.2d 513; *see also* 1 Cluchey & Seitzinger, *Maine Criminal Practice* § 8.2 at III–55 (Gardner ed. 1995). In any case, the court mitigated the potential for confusion or prejudice by repeatedly giving clear instructions to the jury to treat each charge separately, and to avoid inferring guilt from the number of charges or conflating guilt on one charge with guilt on another. *See Pierce,* 2001 ME 14, ¶ 19, 770 A.2d 630; *Brown,* 1998 ME 129, ¶ 10 n. 8, 712 A.2d 513.

■ [¶ 25] Lemay next argues that evidence of the charges related to the gross sexual assault and the tampering charge would not have been admissible in a separate trial for attempted escape, and that evidence of attempted escape would not have been admissible in a separate trial for the charges related to the gross sexual assault and the tampering charge. Lemay has not argued that evidence of his prior convictions or incarceration was im-

properly admitted because of the joinder, and we conclude that the joinder did not affect the admissibility of this evidence.[4]

[¶ 26] The linchpin of the prejudice analysis is whether joinder would lead to the admission of evidence that would be inadmissible in separate trials. *See Pierce,* 2001 ME 14, ¶ 18, 770 A.2d 630; *Brown,* 1998 ME 129, ¶ 9, 712 A.2d 513; *State v. Pierce,* 474 A.2d 182, 184–85 (Me. 1984); *United States v. Fenton,* 367 F.3d 14, 22 (1st Cir.2004). Maine Rules of Evidence 401 through 403 do not prohibit the admission of evidence of flight, concealment, or analogous conduct as probative to establish a consciousness of guilt, and Rule 404(b) does not prohibit evidence of other "bad acts" if the evidence is probative of motive or intent rather than propensity to commit crime. *See Barnes,* 2004 ME 38, ¶ 5, 845 A.2d 575.

[¶ 27] Lemay has failed to show that any inadmissible evidence was admitted because of the joinder. Evidence of the charges related to the gross sexual assault would be admissible in a separate trial for tampering or attempted escape in order to prove Lemay's motive or intent. *See State v. Parsons,* 2005 ME 69, ¶ 14, 874 A.2d 875 (holding that evidence of defendant's possession of sexually explicit materials was probative of motive and intent in sexual abuse of his child, and therefore admissible). Evidence of the attempted escape and tampering charges would likewise be admissible in a separate trial for gross sexual assault as proof of a consciousness

---

3. M.R. Evid. 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."

4. Independent of the joinder issue, Lemay has not challenged the court's ruling on his motion in limine that allowed the admission of some evidence related to his prior convictions and incarceration. This evidence was intro-

duced at trial through a recording of the victim's 911 call, a recording of the victim's interview with police, the victim's testimony at the trial, and a recording of Lemay's interview with police. Lemay's counsel may have chosen not to challenge the admission of this evidence at trial as a matter of strategy, because it enabled Lemay to provide his account to the jury without being subject to cross-examination.

of guilt. *See Barnes,* 2004 ME 38, ¶ 5, 845 A.2d 575 (stating that "evidence of flight, concealment, or analogous conduct is probative to establish a consciousness of guilt" (quotation marks omitted)); *State v. McEachern,* 431 A.2d 39, 43–44 (Me.1981) (upholding the trial court's admission of evidence of tampering with a victim after the crime as probative of guilt for the underlying crime). This holds true even without the suppressed statements related to the attempted escape, because the jury could infer a guilty conscience from the escape, just as it could from the charge of eluding an officer. *See Barnes,* 2004 ME 38, ¶ 5, 845 A.2d 575; *see also* Alexander, *Maine Jury Instruction Manual* § 6–39 at 6–58 (4th ed. 2012).

■ [¶ 28] Finally, Lemay argues that the joinder infringed on his Fifth Amendment right to testify in his own defense. He contends that if the charges had been tried separately he would have testified in the gross sexual assault trial, but not in the escape trial, because taking the stand in the escape trial would open the door for the State to use his statements about "trying to hide" to impeach his testimony. Because the charges were joined, he argues, he was forced to choose between (a) testifying about the gross sexual assault and allowing the suppressed statements about escaping to come in, and (b) not testifying at all in order to keep those statements out.

■ [¶ 29] In order to prevail on this claim, Lemay "must make a threshold showing that he has salient testimony to give [concerning] one count and an articulable need to refrain from giving testimony on the other(s)." *Fenton,* 367 F.3d at 22. He is required to give a "particularized offer of proof [detailing] the testimony that he proposes to give and indicating how it would further his defense," rather than just "bald assertion[s] of innocence." *Id.; accord, e.g., State v. Lakin,* 2006 ME 64,

¶ 8, 899 A.2d 777 (stating that the party moving for severance bears the burden of showing facts prior to trial to establish that joinder would result in prejudice).

[¶ 30] Here, Lemay refrained from outlining his testimony for the court at the pretrial hearing on the State's motion to join in order to avoid "telegraphing the defense's theory of defense." His written objection to the State's motion only stated that the joinder "would put Defendant in the position of having to testify or not testify with respect to all matters; Defendant would be able to testify or not testify in separate trials." Lemay did not elaborate on his proposed testimony during the in-chambers conference at trial. Thus, Lemay has not provided a sufficiently-detailed explanation of the matters to which he would have testified, which inhibits our ability to assess prejudice.

[¶ 31] The record suggests that were Lemay to take the stand at a separate trial on the charges related to the gross sexual assault, he would testify that he was invited inside the victim's home; the sexual contact was consensual; he only revealed a small knife that he used for work in the course of emptying his pockets before intercourse; the victim got a black eye after he slapped her during consensual intercourse; and that he only hid from police because he was "scared" that the victim seemed "off" towards the end of their encounter, after he revealed that he had been in prison for twenty-two years. *See United States v. Alosa,* 14 F.3d 693, 695 (1st Cir.1994) (discussing the testimony the court expected the defendant to give, in the absence of a clear indication from the defendant as to what his testimony would actually have been).

[¶ 32] However, Lemay's decision not to testify did not deprive the jury of this information. Other evidence presented covered much of what Lemay would likely

have testified to: his interview with police, which included his assertions of innocence and his account of the encounter, was played for the jury; the police officers who interviewed Lemay testified and were cross-examined; and his letter to his brother explicitly claims his innocence, as it asks the victim to "tell the truth" so that Lemay could avoid going to jail "for something [he] didn't do." *See Alosa*, 14 F.3d at 695 (upholding joinder where the testimony the court expected the defendant to give was "some distance from ... a credible alibi that only the defendant can supply"); *cf. Jordan*, 112 F.3d at 17 (holding that joinder was improper because the defendant's planned defense was eviscerated without testimony that only he could supply).

[¶ 33] In addition, Lemay might not have testified in a separate trial for other reasons. The State could have introduced evidence of his attempted escape in a trial for the charges related to the gross sexual assault to prove a consciousness of guilt, *Barnes*, 2004 ME 38, ¶ 5, 845 A.2d 575, and could have used the suppressed statements about wanting to hide to impeach his testimony pursuant to the court's evidentiary ruling. The State also could have cross-examined Lemay about his prior conviction and incarceration to the extent that evidence of both could have come in through the recordings of the victim's interview with police, her 911 call, her testimony, and Lemay's interview with police. Evidence about other criminal conduct would have been admissible to test Lemay's assertions in his interview that he "wouldn't" have threatened the victim. Lemay clearly wanted to avoid these issues at trial. On this record there is no indication that his choice not to testify was compelled by the joinder or that it hindered his defense. *See Alosa*, 14 F.3d at 695–96 (noting the potential for the defendant's proposed testimony to have helped

the government had the defendant been able to testify).

[¶ 34] The record makes clear that the court carefully considered and thoroughly evaluated Lemay's arguments. The court also took care to give relevant instructions to the jury to reduce the potential for prejudice resulting from the joinder. Lemay failed to prove that any inadmissible evidence would be or was admitted due to the joinder, or that his choice not to testify interfered with his ability to present his defense. Given that the trial court has wide discretion to join and sever trials, on this record it was not an abuse of discretion for the court to ultimately conclude that the balance in this case tipped in favor of joinder.

The entry is:

Judgment affirmed.